EXHIBIT "A"

ome (http://www.miami-dadeclerk.com/home.asp)
nline Services (http://www.miami-dadeclerk.com/online_services.asp)
bout Us (http://www.miami-dadeclerk.com/about.asp)
ontact Us (http://www.miami-dadeclerk.com/contact.asp)
y Account (https://www2.miami-dadeclerk.com/PremierServices/login.aspx)

 

# Miami-Dade County Civil, Family and Probate Courts Online System

◀◀ Back to Results

## BONNIE B LUCAS ET AL VS USAA CASUALTY INSURANCE COMPANY

**Local Case Number:** 2017-004213-CA-01

**Filing Date:** 02/21/2017

**State Case Number:** 132017CA004213000001

**Case Type:** Insurance Claim

**Consolidated Case No.:** N/A

**Judicial Section:** CA15

**Case Status:** OPEN

👥 **Parties**                                    Number of Parties: 4  ✚

🔨 **Hearing Details**                            Number of Hearing: 1  ✚

🔊 **Dockets**                                    Dockets Retrieved: 17  ▬

Export to ▾

| | Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|---|---|---|---|---|---|---|
| | | 06/30/2017 | | Special Sets | Hearing | **MOTION TO DISMISS** |
| 📄 | 16 | 05/18/2017 | | Notice of Hrg Special Appt | Event | **06/30/17 AT 09:00, ROOM 400** |
| 📄 | 15 | 05/18/2017 | | Notice of Filing: | Event | **FEDERAL COURT JUDGMENT IN FAVOR OF DEF IN SUPPORT OF MOTION TO DISMISS WITH PREJUDICE** |
| 📄 | 14 | 05/16/2017 | | Motion for Attorneys Fees | Event | |
| 📄 | 13 | 04/13/2017 | | Notice of Filing: | Event | **FEDERAL COURT ORDER IN SUPPORT OF DEF'S MOTION TO DISMISS WITH PREJUDICE** |
| 📄 | 12 | 04/07/2017 | | Copy of: | Event | **PN'S MOTION RELIEF FROM A JUDGEMENT OR ORDER UNDER RULE** |
| 📄 | 11 | 04/07/2017 | | Response to Request for Admissions | Event | |
| 📄 | 10 | 04/07/2017 | | Response: | Event | **TO DN USAA MOTION TO DISMISS** |
| 📄 | 9 | 03/20/2017 | | Notice Has Wrong Time | Event | **FILING # 53903112 REJECTED PER JUDGE** |
| 📄 | 8 | 03/17/2017 | | Notice of Hearing- | Event | **04/11/2017** |
| 📄 | 7 | 03/06/2017 | | Motion to Dismiss | Event | *Parties: Mike Snowden; USAA CASUALTY INSURANCE COMPANY* |

| Number | Date | Book/Page | Docket Entry | Event Type | Comments |
|--------|------|-----------|--------------|------------|----------|
| 6 | 02/23/2017 | | Receipt: | Event | RECEIPT#:3060004 AMT PAID:$10.00 ALLOCATION CODE QUANTITY UNIT AMOUNT 3139-SUMMONS ISSUE FEE 1 $10.00 $10.00 TENDER TYPE:CHECK TENDER AMT:$10.00 RECEIPT DATE:02/23/2017 REGISTER#:306 CASHIER:ROJ |
| 5 | 02/23/2017 | | Receipt: | Event | RECEIPT#:3610244 AMT PAID:$401.00 NAME:GILBERT, RONALD B. PO BOX 560396 MIAMI FL 33256-0396 ALLOCATION CODE QUANTITY UNIT AMOUNT 3100-CIRCUIT FILING FEE 1 $401.00 $401.00 TENDER TYPE:E-FILING ACH TENDER AMT:$401.00 RECEIPT DATE:02/2 |
| 4 | 02/21/2017 | | Copy of: | Event | |
| 3 | 02/21/2017 | | Copy of: | Event | |
| 2 | 02/21/2017 | | Complaint | Event | |
| 1 | 02/21/2017 | | Civil Cover | Event | |

◀◀ Back to Results

**Please be advised:**

The Clerk's Office makes every effort to ensure the accuracy of the following information; however it makes no warranties or representations whatsoever regarding the completeness, accuracy, or timeliness of such information and data. Information on this website has been posted with the intent that it be readily available for personal and public non-commercial (educational) use and to provide the public with direct online access to information in the Miami-Dade Clerk's Office information systems. Other than making limited copies of this

website's content, you may not reproduce, retransmit, redistribute, upload or post any part of this website, including the contents thereof, in any form or by any means, or store it in any information storage and retrieval system, without prior written permission from the Miami-Dade Clerk's Office.

If you are interested in obtaining permission to reproduce, retransmit or store any part of this website beyond that which you may use for personal use, as defined above, visit our Web API Services (https://www2.miami-dadeclerk.com/Developers). To review the complete Miami-Dade County Disclaimer, follow this link: http://www.miamidade.gov/info/disclaimer.asp (http://www.miamidade.gov/info/disclaimer.asp)

---

Email (https://miamidadecounty.co1.qualtrics.com/SE/?SID=SV_bDvccbiqJBvQ2LH)

| Login (/PremierServices/login.aspx?ReturnUrl=https://www2.miami-dadeclerk.com/ocs/Search.aspx)

Home (http://www.miami-dadeclerk.com/home.asp)

| Privacy Statement (http://www.miamidade.gov/info/privacy_and_security.asp)

| Disclaimer (http://www.miamidade.gov/info/disclaimer.asp)   (http://www.miamidade.gov)

| Contact Us (http://www.miami-dadeclerk.com/contact.asp)

| About Us (http://www.miami-dadeclerk.com/about.asp)

2015 Clerk of the Courts. All Rights reserved.

S0142976

Filing # 52789532 E-Filed 02/21/2017 04:47:53 PM

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of
pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk
of the Court for the purpose of reporting judicial workload data pursuant to Florida Statutes section 25.075.

**I.    CASE STYLE**

IN THE CIRCUIT COURT OF THE <u>ELEVENTH</u>  JUDICIAL CIRCUIT,
IN AND FOR <u>MIAMI-DADE</u>  COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>BONNIE B LUCAS, RICHARD LUCAS, BONNIE LUCAS</u>
Plaintiff

vs.

<u>USAA CASUALTY INSURANCE COMPANY</u>
Defendant

**II.    TYPE OF CASE**

| | |
|---|---|
| ☐ Condominium | ☐ Other real property actions $0 - $50,000 |
| ☐ Contracts and indebtedness | ☐ Other real property actions $50,001 - $249,999 |
| ☐ Eminent domain | ☐ Other real property actions $250,000 or more |
| ☐ Auto negligence | |
| ☐ Negligence – other | ☐ Professional malpractice |
|   ☐ Business governance |   ☐ Malpractice – business |
|   ☐ Business torts |   ☐ Malpractice – medical |
|   ☐ Environmental/Toxic tort |   ☐ Malpractice – other professional |
|   ☐ Third party indemnification | ☒ Other |
|   ☐ Construction defect |   ☐ Antitrust/Trade Regulation |
|   ☐ Mass tort |   ☐ Business Transaction |
|   ☐ Negligent security |   ☐ Circuit Civil - Not Applicable |
|   ☐ Nursing home negligence |   ☐ Constitutional challenge-statute or |
|   ☐ Premises liability – commercial |     ordinance |
|   ☐ Premises liability – residential |   ☐ Constitutional challenge-proposed |
| ☐ Products liability |     amendment |
| ☐ Real Property/Mortgage foreclosure |   ☐ Corporate Trusts |
|   ☐ Commercial foreclosure $0 - $50,000 |   ☐ Discrimination-employment or other |
|   ☐ Commercial foreclosure $50,001 - $249,999 |   ☒ Insurance claims |
|   ☐ Commercial foreclosure $250,000 or more |   ☐ Intellectual property |
|   ☐ Homestead residential foreclosure $0 – 50,000 |   ☐ Libel/Slander |
|   ☐ Homestead residential foreclosure $50,001 - |   ☐ Shareholder derivative action |
|     $249,999 |   ☐ Securities litigation |
|   ☐ Homestead residential foreclosure $250,000 or |   ☐ Trade secrets |
|     more |   ☐ Trust litigation |
|   ☐ Non-homestead residential foreclosure $0 - | |
|     $50,000 | |
|   ☐ Non-homestead residential foreclosure | |
|     $50,001 - $249,999 | |
|   ☐ Non-homestead residential foreclosure | |
|     $250,00 or more | |

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
      ☒   Monetary;
      ☐   Non-monetary
      ☐   Non-monetary declaratory or injunctive relief;
      ☐   Punitive

IV.   **NUMBER OF CAUSES OF ACTION:** (      )
    (Specify)

    2

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
      ☐   Yes
      ☒   No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
      ☐   No
      ☒   Yes – If "yes" list all related cases by name, case number and court:

    2016-017389-CA-01

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
      ☒   Yes
      ☐   No

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature s/ Ronald B. Gilbert       FL Bar No.: 111332
    Attorney or party                                        (Bar number, if attorney)

    Ronald B. Gilbert      02/21/2017
    (Type or print name)                  Date

Filing # 52789532 E-Filed 02/21/2017 04:47:53 PM

CIRCUIT IN AND  FOR MIAMI -DADE COUNTY,
FLORIDA

BONNIE LUCAS and RICHARD LUCAS, her Husband,

    Plaintiffs,

v.

USAA CASUALTY INSURANCE COMPANY,

    Defendant.

_____/

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Plaintiffs, **BONNIE LUCAS AND RICHARD LUCAS, his wife,** by and through

undersigned counsel and pursuant to the applicable Federal Rules of Civil Procedure, files

Plaintiffs' COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL. Plaintiffs state in

support as follows.

## THE PARTIES AND JURISDICTION

1.    This is an action seeking damages in excess of $75,000.00, exclusive of interest,

costs and attorney's fees.

2.    The Plaintiffs, **BONNIE LUCAS AND RICHARD LUCAS, her Husband**, and

are *sui juris* and are residents of Miami-Dade County, Florida.

3.    At all times material, hereto, the Plaintiffs, **BONNIE LUCAS AND**

**RICHARD LUCAS, his wife**, were married and continue to be married.

4.    The Defendant, **USAA CASUALTY INSURANCE COMPANY** (hereinafter

"USAA"), is a foreign corporation incorporated in San Antonio, Texas, authorized to conduct

1

and does conduct business in the State of Florida, and at all times material hereto was and is doing business in Miami-Dade County, Florida, and is *sui juris*.

5.    The Defendant, at all times material hereto, personally or through an agent, in the County and in the District in which this Complaint is filed:

    a.    Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

    b.    Had an office or agency in this state and/or county; and/or

    c.    Engaged in substantial activity within this state; and/or

    d.    Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193;

6.    All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## OTHER ALLEGATIONS COMMON TO ALL COUNTS

7.    **DATE OF ACCIDENT.** This accident occurred on **11/9/2014**.

8.    **LOCATION OF ACCIDENT.** This accident occurred at or near on or about **November 9th, 2014**, the Plaintiff, BONNIE LUCAS was traveling on or about at or near SW 104th Street and 122nd Avenue, Miami, Miami-Dade County, Florida when she was struck by **FABIOLA MAFIOL**, the tortfeasor who negligently operated and/or maintained her motor vehicle turning left in front of the vehicle the Plaintiff BONNIE LUCAS was driving by failing to yield right of way at the intersection of SW 104th and SW 122nd Avenue, Miami, Miami-Dade County, Florida causing it to strike the vehicle the Plaintiff, BONNIE LUCAS, was driving causing her bodily injury and emotional damage.

2

## STATUS OF PLAINTIFFS AS OF DATE AND TIME OF ACCIDENT

At all times mentioned, Plaintiffs **BONNIE LUCAS AND RICHARD LUCAS, her Husband** had in full force and effect a written automobile liability insurance policy, Policy No. 003460875–8, referred to as "the policy," issued to Plaintiffs **BONNIE LUCAS AND RICHARD LUCAS,** as the insured by Defendant. Implied in the policy was a covenant by defendant that defendant would act in good faith and deal fairly with the insured and that it would do nothing to interfere with the rights of the insured to receive benefits under the policy.

**DESCRIPTION OF THE ACCIDENT**. This accident occurred at or near on or about **November 9th, 2014,** the Plaintiff, BONNIE LUCAS vehicle was operated in a reasonable and prudent manner, with due caution and regard for the motor vehicle laws of the State of Florida and was traveling on or about at or near SW 104th Street and 122nd Avenue, Miami, Miami-Dade County, Florida when she was struck by **FABIOLA MAFIOL**, the tortfeasor who negligently operated and/or maintained her motor vehicle turning left in front of the vehicle the Plaintiff BONNIE LUCAS was driving by failing to yield right of way at the intersection of SW 104th and SW 122nd Avenue, Miami, Miami-Dade County, Florida causing it to strike the vehicle the Plaintiff, BONNIE LUCAS, was driving causing her bodily injury and emotional damage.

### COUNT 1

### CLAIM ON UNINSURED/UNDERINSURED MOTORIST POLICY

The Plaintiffs hereby adopt and reallege each and every allegation in paragraphs 1 through 11, above.

3

8.   **THE POLICY.** The Defendant, **USAA**, issued in exchange for valuable consideration, a
policy of automobile insurance to the Plaintiffs, **BONNIE LUCAS AND RICHARD LUCAS,**
**her Husband**, under policy number Policy No. 003460875-8, which provided
insurance benefits to the Plaintiffs, **BONNIE LUCAS AND RICHARD**
**LUCAS, her Husband**, see policy of Liability Insurance attached hereto as Exhibit A and
Declaration sheet as Exhibit B which provided coverage of $400,000.00.

9.   The terms and conditions of the insurance policy are incorporated herein by
reference. Said policy was in full force and effect at all material and relevant times herein. The
policy from Defendant, **USAA,** provided for uninsured/underinsured motorist benefits to the
Plaintiffs, **BONNIE LUCAS AND RICHARD LUCAS, her husband**.

10.   The Plaintiffs, **BONNIE LUCAS AND RICHARD LUCAS, her husband,**
have complied with all terms and conditions precedent to entitlement to
uninsured/underinsured motorist benefits under the applicable USAA policy.

11.   **UNINSURED/UNDERINSURED MOTORIST:** The driver of the at-fault
vehicle, Fabiola Mafiol, an underinsured motorist (Her Insurance Policy had $10,000 coverage),
does not have adequate insurance to cover the damages sustained by the Plaintiffs which exceed
$10,000.00 over personal protection medical and lost income payable.

12.   **THE CLAIM**: This is an action for uninsured/underinsured motorist benefits,
by the Plaintiffs, **BONNIE LUCAS AND RICHARD LUCAS, his wife,** for damages
sustained due to the negligence of Fabiola Mafiol., an uninsured/underinsured motorist. Despite
demands by the Plaintiffs, **BONNIE LUCAS AND RICHARD LUCAS, her husband** to date,
the Defendant, **USAA**, has refused and continues to refuse to honor the Plaintiffs, **BONNIE**
**LUCAS AND RICHARD LUCAS, his wife's** request for reasonable payment under the

4

applicable uninsured/underinsured motorist provision  of the USAA policy.

13.     **DAMAGES**: As a result of the collision set forth herein, the Plaintiff,

**B O N N I E   L U C A S**, has suffered bodily injury and resulting pain and

suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment

of life, expense of hospitalization, expense of surgical care and treatment, lost wages, and

loss of ability to earn money. The losses are either permanent or continuing in nature and the

Plaintiff, **BONNIE LUCAS,** will continue to suffer the losses in the future which exceed the

liability coverage of $10, 000.00 coverage of the **FABIOLA MAFIOL** the at fault underinsured

motorist who has tendered the policy limits which **USAA** agreed the **BONNIE LUCAS** could

accept waiving their subrogation rights and agreeing to negotiate the remaining underinsured

coverage subject to **BONNIE LUCAS** claim for damages exceeding the tender policy limits of

**FABIOLA MAFIOL** the at fault underinsured motorist .

**WHEREFORE**, the Plaintiffs, **BONNIE LUCAS** demand Judgment for damages

exceeding the $10,000 coverage tendered against the Defendant, **USAA,** and all such other

relief as this Court deems just and equitable.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

### COUNT II
### LOSS OF CONSORTIUM

14.     The Plaintiffs hereby adopt and reallege each and every allegation in paragraphs 1

through 13, above.

15.     At the time of the collision set forth herein, the Plaintiffs, **BONNIE LUCAS**

**AND RICHARD LUCAS, her husband,** were lawfully married, and they continue to be

5

married.

16.     As a result of Fabiola Mafiol., an uninsured motorist's negligence, the **Plaintiff**
**BONNIE LUCAS** has suffered and continues to suffer injuries which have had a catastrophic
effect on both the quality of her life and her marriage with the Plaintiff, **RICHARD LUCAS**.

17.     The Plaintiff, **RICHARD LUCAS,** has suffered and will continue to suffer loss of
consortium, loss of society, services, affection, assistance, and conjugal fellowship to the
continuing detriment of his marriage to Plaintiff **BONNIE LUCAS** due to the injuries she
sustained as a result of Fabiola Mafiol., an uninsured/underinsured motorist's negligence with
regards to Plaintiff **BONNIE LUCAS.**

**WHEREFORE** the Plaintiff, **RICHARD LUCAS,** demands judgment against the
Defendant for damages when added to his wife claim exceeding the $10,000 coverage tendered
suffered as a result of any loss by reason of Plaintiff **B O N N I E   L U C A S** ' s injuries and
loss of his services, comfort, society, and attentions in the past and in the future caused by
Fabiola Mafiol., an uninsured/underinsured motorist's negligence, and any and all relief this Court
deems necessary and just.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 21ˢᵗ Day of February, 2017.

**RONALD B. GILBERT**
**Attorney for Plaintiff**
**Rgilb4193@hotmail.com**
**Mailing address:  P.O. Box 560396**
**Miami, FL 33256-0396**
**(305) 546-6297**
**FAX: 305-235-0586**
By: <u>s/Ronald B. Gilbert</u>
    **RONALD B. GILBERT**
    **Florida Bar No. 111332**
                6

Case 1:17-cv-22848-KMM   Document 1-2   Entered on FLSD Docket 07/28/2017   Page 16 of 117

Filing # 52789532 E-Filed 02/21/2017 04:47:53 PM    EXHIBIT A

**USAA CASUALTY INSURANCE COMPANY**
(A Stock Insurance Company)
Fredericksburg Road · San Antonio, Texas 78288

FLORIDA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

ADD'L INFO ON NEXT PAGE   MAIL MCH-M-I   PAGE 3
AMENDMENT TO

| | POLICY NUMBER |
|---|---|
| State 02 ,04 ,05 ,06 ,   Veh | |
| FL 168 168 168 254  Ter | 00346 08 75C 7104 2 |

POLICY PERIOD:   (12:01 A.M. standard time)
EFFECTIVE AUG 13 2014 TO JAN 07 2015

OPERATORS
01 RICHARD J LUCAS
03 BONNIE J LUCAS
04 SCOTT J LUCAS
05 KATELYN J LUCAS

**Named Insured and Address**

RICHARD J LUCAS
15459 SW 143RD TER
MIAMI FL 33196-6032

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE |
|---|---|---|---|---|---|---|---|---|
| 02 | 05 | CHEV | SLVRDO 1500 | 2+ DOOR | 1000 | 1GCEC19X85Z193276 | | P |
| 04 | 06 | CHEV | MALIBU 4D LT | 4 DOOR | 7000 | 1G1ZT51F66F179450 | | P |
| 05 | 12 | CHEV | MALIBU | 4 DOOR | 34000 | 1G1ZA5EU2CF133091 | | P |
| 06 | 14 | CHEV | CRUZE 4D LS | 4 DOOR | 14000 | 1G1PA5SH9E7194305 | | P |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. W=Work/School B=Business F=Farm P=Pleasure

VEH 02    MIAMI FL 33196-6032          VEH 05    MIAMI FL 33196-6032
VEH 04    MIAMI FL 33196-6032          VEH 06    LAKELAND FL 33801-6034

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES ("ACV" MEANS ACTUAL CASH VALUE) | LIMITS OF LIABILITY | VEH 02 DED AMOUNT | 6-MONTH PREMIUM $ | VEH 04 DED AMOUNT | 6-MONTH PREMIUM $ | VEH 05 DED AMOUNT | 6-MONTH PREMIUM $ | VEH 06 DED AMOUNT | 6-MONTH PREMIUM $ |
|---|---|---|---|---|---|---|---|---|---|
| **PART A - LIABILITY** | | | | | | | | | |
| BODILY INJURY       EA PER $ | 100,000 | | | | | | | | |
|                     EA ACC $ | 300,000 | | 296.98 | | 562.71 | | 348.22 | | 319.39 |
| PROPERTY DAMAGE EA ACC $ | 100,000 | | 123.01 | | 197.36 | | 109.74 | | 111.82 |
| **PART B - PERSONAL INJURY PROTECTION** | | | | | | | | | |
| MAXIMUM BENEFITS | $10,000 | | | | | | | | |
| DEDUCTIBLE APPLIES TO | | | | | | | | | |
| NAMED INSD/RESIDENT RELATIVE | | D 500 | 54.68 | D 500 | 128.80 | D 500 | 88.77 | D 500 | 114.73 |
| **PART C - UNINSURED MOTORISTS** | | | | | | | | | |
| STACKED | | | | | | | | | |
| BODILY INJURY       EA PER $ | 100,000 | | | | | | | | |
|                     EA ACC $ | 300,000 | | 161.82 | | 186.00 | | 187.86 | | 190.80 |
| **PART D - PHYSICAL DAMAGE COVERAGE** | | | | | | | | | |
| COMPREHENSIVE LOSS      ACV LESS | | D 500 | 69.70 | D 500 | 111.10 | D 500 | 86.57 | D 500 | 59.02 |
| COLLISION LOSS          ACV LESS | | | | D 500 | 314.96 | D 500 | 231.41 | D 500 | 237.57 |
| RENTAL REIMBURSEMENT | | | | | | | | | |
|   $ 30 A DAY/$ | 300 MAXIMUM | | 22.69 | | 22.69 | | 22.69 | | 22.69 |
| TOWING AND LABOR | | | 8.15 | | 8.15 | | 8.15 | | 8.15 |

TOTAL PREMIUM - SEE FOLLOWING PAGE(S)

LOSS PAYEE
VEH 06   ALLY FINANCIAL, COCKEYSVILLE  MD

ENDORSEMENTS   AMEND 08-13-14 -  NONE
REMAIN IN EFFECT (REFER TO PREVIOUS POLICY)-   5100FL(02)   ACCFOR(01)
INFORMATION FORMS:   939FL(02)
J2

| 02 | XXX40 000 00 | 04 | FSM22 000 00 | 05 | RMF44 000 00 | 06 | RSF19 000 00 |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                                    on this date   AUGUST 12, 2014

*[signature]*

*Steven Alan Bennett, Secretary*        *Kevin Bergner, President*

5000 C 05-12
63388-0515
09011119 69367aa

MARIA ELENA MC ALEXANDER

**USAA Confidential**

Filing # 52789532 E-Filed 02/21/2017 04:47:53 PM

 San Antonio, TX 78288                    EXHIBIT B

USAA®

RONALD GILBERT                                               August 25, 2015
RONALD B. GILBERT, ATTORNEY
P.O. BOX 560396
MIAMI FL 33256-0396

Reference: Bonnie Lucas

Dear Mr. Gilbert,

I am writing regarding the claim referenced below.

     Policyholder:        Richard J Lucas
     Reference #:       003460875–8
     Date of loss:      November 9, 2014
     Location of loss:   Miami, Florida

Please find Bonnie Lucas' policy and declaration pages attached. The notarized disclosure is sent
under separate cover.

You may submit correspondence or questions to me. My contact information is:

    **Address:**   Auto Injury Solutions
              Attn: USAA Medical Mail Dept.
              P.O. Box 26001
              Daphne, AL 36526
    **Fax:**       1-866-828-2330
    **Phone:**   1 800 531 8722, ext 44816

Sincerely,

*Steve Durbin*

Stephen M Durbin
USAA Southeast Regional Office
USAA Casualty Insurance Company
Phone: 1 800 531 8722, ext 44816
Fax: 1-800-531-8669

Enc: Dec page
     Policy

003460875 - DM-04664 - 8 - 7941 - 43

54577-0715

Page 1 of 1

**USAA CASUALTY INSURANCE COMPANY**
(A Stock Insurance Company)
Fredericksburg Road - San Antonio, Texas 78288

FLORIDA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

**Named Insured and Address**

RICHARD J LUCAS
15459 SW 143RD TER
MIAMI FL 33196-6032

PAGE   3
ADDL INFO ON NEXT PAGE   MAIL MCH-M-I
AMENDMENT TO

| State | 02 | 04 | 05 | 06 | Veh | POLICY NUMBER |
|---|---|---|---|---|---|---|
| FL | 168 | 168 | 168 | 254 | Terr | 00346 08 75C 7104 2 |

POLICY PERIOD: (12:01 A.M. standard time)
EFFECTIVE AUG 13 2014 TO JAN 07 2015

OPERATORS
01 RICHARD J LUCAS
03 BONNIE J LUCAS
04 SCOTT J LUCAS
05 KATELYN J LUCAS

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE* Miles One Way | WORK&CO. Days Per Week |
|---|---|---|---|---|---|---|---|---|---|
| 02 | 05 | CHEV | SLVRDO 1500 | 2+ DOOR | 1000 | 1GCEC19X85Z193276 | | P | |
| 04 | 06 | CHEV | MALIBU 4D LT | 4 DOOR | 7000 | 1G1ZT51F66F179450 | | P | |
| 05 | 12 | CHEV | MALIBU | 4 DOOR | 34000 | 1G1ZA5EU2CF133091 | | P | |
| 06 | 14 | CHEV | CRUZE 4D LS | 4 DOOR | 14000 | 1G1PA5SH9E7194305 | | P | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. *W/C=Work/School B=Business F=Farm P=Pleasure

VEH 02   MIAMI FL 33196-6032          VEH 05   MIAMI FL 33196-6032
VEH 04   MIAMI FL 33196-6032          VEH 06   LAKELAND FL 33801-6034

This policy provides ONLY those coverages where a premium is shown below. The limits shown may be reduced by policy provisions and may not be combined regardless of the number of vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | | VEH 02 D=DED AMOUNT | 6-MONTH PREMIUM $ | VEH 04 D=DED AMOUNT | 6-MONTH PREMIUM $ | VEH 05 D=DED AMOUNT | 6-MONTH PREMIUM $ | VEH 06 D=DED AMOUNT | 6-MONTH PREMIUM $ |
|---|---|---|---|---|---|---|---|---|---|
| PART A - LIABILITY | | | | | | | | | |
| BODILY INJURY | EA PER $ 100,000 | | | | | | | | |
| | EA ACC $ 300,000 | | 296.98 | | 562.71 | | 348.22 | | 319.39 |
| PROPERTY DAMAGE | EA ACC $ 100,000 | | 123.01 | | 197.36 | | 109.74 | | 111.82 |
| PART B - PERSONAL INJURY PROTECTION | | | | | | | | | |
| MAXIMUM BENEFITS | $10,000 | | | | | | | | |
| DEDUCTIBLE APPLIES TO | | | | | | | | | |
| NAMED INSD/RESIDENT RELATIVE | | D 500 | 54.68 | D 500 | 128.80 | D 500 | 88.77 | D 500 | 114.73 |
| PART C - UNINSURED MOTORISTS | | | | | | | | | |
| STACKED | | | | | | | | | |
| BODILY INJURY | EA PER $ 100,000 | | | | | | | | |
| | EA ACC $ 300,000 | | 161.82 | | 186.00 | | 187.86 | | 190.80 |
| PART D - PHYSICAL DAMAGE COVERAGE | | | | | | | | | |
| COMPREHENSIVE LOSS | ACV LESS | D 500 | 69.70 | D 500 | 111.10 | D 500 | 86.57 | D 500 | 59.02 |
| COLLISION LOSS | ACV LESS | | | D 500 | 314.96 | D 500 | 231.41 | D 500 | 237.57 |
| RENTAL REIMBURSEMENT | | | | | | | | | |
| $ 30 A DAY/$ 900 MAXIMUM | | | 22.69 | | 22.69 | | 22.69 | | 22.69 |
| TOWING AND LABOR | | | 8.15 | | 8.15 | | 8.15 | | 8.15 |

TOTAL PREMIUM - SEE FOLLOWING PAGE(S)

LOSS PAYEE
VEH 06   ALLY FINANCIAL, COCKEYSVILLE   MD

ENDORSEMENTS: ADDED 08-13-14 -  NONE
REMAIN IN EFFECT(REFER TO PREVIOUS POLICY)-  5100FL(02)  ACCFOR(01)
INFORMATION FORMS:  999FL(02)

V2

| 02 | XXX400000 | | 04 | RSM220000 | | 05 | RMF440000 | | 06 | RSF190000 | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                on this date   AUGUST 12, 2014

Steven Alan Bennett, Secretary            Kevin Bergner, President

5000 C 05-12
53383-0512
MARIA ELENA MCALEXANDER
09011119G9367aaf2

USAA Confidential

ADDL INFO ON NEXT PAGE          PAGE   4

**USAA CASUALTY INSURANCE COMPANY**

(A Stock Insurance Company)
Fredericksburg Road - San Antonio, Texas 78288

FLORIDA AUTO POLICY
AMENDED DECLARATIONS
(ATTACH TO PREVIOUS POLICY)

| State | 02 | 04 | 05 | 06 | Veh | POLICY NUMBER |
|---|---|---|---|---|---|---|
| FL | 168 | 168 | 168 | 254 | Terr | 00346 08 75C  7104 2 |

POLICY PERIOD:        (12:01 A.M. standard time)
EFFECTIVE AUG 13 2014 TO JAN 07 2015

**Named Insured and Address**

RICHARD J LUCAS
15459 SW 143RD TER
MIAMI FL 33196-6032

**Description of Vehicle(s)**

| VEH | YEAR | TRADE NAME | MODEL | BODY TYPE | ANNUAL MILEAGE | IDENTIFICATION NUMBER | SYM | VEH USE | WORK/SCHOOL Miles One Way | COL Days Per Work |
|---|---|---|---|---|---|---|---|---|---|---|
| 02 | 05 | CHEV | SLVRDO 1500 | 2+ DOOR | 1000 | 1GCEC19X85Z193276 | | P | | |
| 04 | 06 | CHEV | MALIBU 4D LT | 4 DOOR | 7000 | 1G1ZT51F66F179450 | | P | | |
| 05 | 12 | CHEV | MALIBU | 4 DOOR | 34000 | 1G1ZA5EU2CF133091 | | P | | |
| 06 | 14 | CHEV | CRUZE 4D LS | 4 DOOR | 14000 | 1G1PA5SH9E7194305 | | P | | |

The Vehicle(s) described herein is principally garaged at the above address unless otherwise stated. W/C=Work/School, B=Business, F=Farm P=Pleasure

VEH 02    MIAMI FL 33196-6032          VEH 05    MIAMI FL 33196-6032
VEH 04    MIAMI FL 33196-6032          VEH 06    LAKELAND FL 33801-6034

This policy provides ONLY those coverages where a premium is shown below. The limits shown
may be reduced by policy provisions and may not be combined regardless of the number of
vehicles for which a premium is listed unless specifically authorized elsewhere in this policy.

| COVERAGES LIMITS OF LIABILITY ("ACV" MEANS ACTUAL CASH VALUE) | | VEH 02 D=DED AMOUNT | 6-MONTH PREMIUM $ | VEH 04 D=DED AMOUNT | 6-MONTH PREMIUM $ | VEH 05 D=DED AMOUNT | 6-MONTH PREMIUM $ | VEH 06 D=DED AMOUNT | 6-MONTH PREMIUM $ |
|---|---|---|---|---|---|---|---|---|---|
| VEHICLE TOTAL PREMIUM | | | 737.03 | | 1531.77 | | 1083.41 | | 1064.17 |
| | TOTAL PREMIUM - SEE FOLLOWING PAGE(S) | | | | | | | | |

| 02 | XXX40000 | | 04 | RSM22000 | | 05 | RMF44000 | | 06 | RSF19000 | |

In WITNESS WHEREOF, we have caused this policy to be signed by our President and Secretary at San Antonio, Texas,
COUNTERSIGNED BY                     on this date AUGUST 12, 2014

5000 C 05-12
53383-05-12          MARIA ELENA MCALEXANDER   Steven Alan Bennett, Secretary          Kevin Bergner, President

0901119c9367aaf2                     USAA Confidential



**USAA**
9800 Fredericksburg Road
San Antonio, Texas 78288

## FLORIDA AUTO POLICY

**READ YOUR POLICY, DECLARATIONS
AND ENDORSEMENTS CAREFULLY**

The automobile insurance contract between the
named insured and the company shown on the
Declarations page consists of this policy plus the
Declarations page and any applicable
endorsements. The Quick Reference section
outlines essential information contained on the
Declarations and the major parts of the policy.

**The policy provides the coverages and
amounts of insurance shown on the
Declarations for which a premium is shown.**

This is a participating policy. You are entitled to
dividends as may be declared by the company's
board of directors.

If this policy is issued by United Services
Automobile Association ("USAA"), a reciprocal
interinsurance exchange, the following apply:

- By purchasing this policy you are a member
  of USAA and are subject to its bylaws.

- This is a non-assessable policy. You are
  liable only for the amount of your premium
  as USAA has a free surplus in compliance
  with Article 19.03 of the Texas Insurance
  Code of 1951, as amended.

- The board of directors may annually allocate
  a portion of USAA's surplus to Subscriber's
  Accounts. Amounts allocated to such
  accounts remain a part of USAA's surplus
  and may be used as necessary to support
  the operations of the Association. A
  member shall have no right to any balance in
  the member's account except until following
  termination of membership, as provided in
  the bylaws.

# QUICK REFERENCE

| | | |
|---|---|---|
| | | **DECLARATIONS PAGE** |
| | | Named Insured and Address |
| | | Policy Period |
| | | Operators |
| | | Description of Vehicle(s) |
| | | Coverages, Amounts of |
| | |   Insurance and Premiums |
| | | Endorsements |
| Beginning on Page | 3 | **Agreement and Definitions** |
| Part A | 4 | **Liability Coverage** |
| | | Definitions |
| | | Insuring Agreement |
| | |   Bodily Injury Liability Coverage and |
| | |   Property Damage Liability Coverage |
| | | Limit of Liability |
| | | Supplementary Payments |
| | | Exclusions |
| | | Out of State Coverage |
| | | Financial Responsibility Required |
| | | Other Insurance |
| Part B-1 | 8 | **Personal Injury Protection Coverage** |
| | | Definitions |
| | | Insuring Agreement |
| | | Limit of Liability |
| | | Application of Deductible |
| | | Exclusions |
| | | Other Insurance |
| Part B-2 | 14 | **Medical Payments Coverage** |
| | | Definitions |
| | | Insuring Agreement |
| | | Limit of Liability |
| | | Exclusions |
| | | Other Insurance |
| | | Special Provisions |

(Quick Reference continued on Page 2)

**5100FL(02)** Rev. 10-12

54109-0912
Page 1 of 34

0901119c9367aaf3                    USAA Confidential

| Part C | 17 | Uninsured Motorists Coverage | Part E | 26 | General Provisions |
|---|---|---|---|---|---|
| | | Definitions | | | Bankruptcy |
| | | Insuring Agreement | | | Changes |
| | | Limit of Liability (Stacked) | | | Conformity to Law |
| | | Exclusions | | | Duties After an Accident or Loss |
| | | Other Insurance | | | Legal Action Against Us |
| | | Non-Duplication | | | Mediation |
| **Part D** | **21** | **Physical Damage Coverage** | | | Misrepresentation |
| | | | | | Non-Duplication of Payment |
| | | Definitions | | | Our Right to Recover Payment |
| | | Insuring Agreement | | | Ownership |
| | |   Comprehensive Coverage | | | Policy Period and Territory |
| | |   Collision Coverage | | | Reducing the Risk of Loss and |
| | |   Rental Reimbursement Coverage | | |   Other Benefits |
| | |   USAA Roadside Assistance | | | Spouse Access |
| | | Limit of Liability | | | Termination |
| | | Payment of Loss | | | Transfer of Your Interest in this |
| | | Loss Payable Clause | | |   Policy |
| | | Waiver of Collision Deductible | | | Two or More Auto Policies |
| | | Exclusions | | | |
| | | Mandatory Pre-Insurance Inspection | | | |
| | | No Benefit to Bailee | | | |
| | | Other Sources of Recovery | | | |
| | | Appraisal | | | |

**5100FL(02)** Rev. 10-12

Page 2 of 34

0901119c9367aaf3        USAA Confidential

# FLORIDA AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we will provide the coverages and limits of liability for which a premium is shown on the Declarations.

## DEFINITIONS

The words defined below are used throughout this policy. They are in **boldface** when used.

A. **"You"** and **"your"** refer to the "named insured" shown on the Declarations and spouse if a resident of the same household.

B. **"We," "us,"** and **"our"** refer to the Company providing this insurance.

C. **"Auto business"** means the business of altering, customizing, leasing, parking, repairing, road testing, delivering, selling, servicing, towing, repossessing, or storing vehicles.

D. **"Bodily injury"** (referred to as **BI**).

  1. **"Bodily injury"** means bodily harm, sickness, disease, or death.

  2. **"Bodily injury"** does not include mental injuries such as emotional distress, mental anguish, humiliation, mental distress, or any similar injury unless it arises out of physical injury to some person.

E. **"Driving contest or challenge"** includes, but is not limited to:

  1. A competition against other people, vehicles, or time; or

  2. An activity that challenges the speed or handling characteristics of a vehicle or improves or demonstrates driving skills, provided the activity occurs on a track or course that is closed from non-participants.

F. **"Family member"** means a person related to **you** by blood, marriage, or adoption who resides primarily in **your** household. This includes a ward or foster child.

G. **"Fungi"** means any type or form of **fungi**, including mold or mildew, and includes any mycotoxins, spores, scents, or byproducts produced or released by **fungi**.

H. **"Miscellaneous vehicle"** means the following motorized vehicles: motor home; golf cart; snowmobile; all-terrain vehicle; or dune buggy.

I. **"Motorcycle"** means a two- or three-wheeled motor vehicle that is subject to motor vehicle licensing in the location where the **motorcycle** is principally garaged.

J. **"Newly acquired vehicle."**

  1. **"Newly acquired vehicle"** means a vehicle, not insured under another policy, that is acquired by **you** or any **family member** during the policy period and is:

    a. A private passenger auto, pickup, **trailer**, or **van**;

    b. A **miscellaneous vehicle** that is not used in any business or occupation; or

    c. A **motorcycle**, but only if a **motorcycle** is shown on the current Declarations.

**5100FL(02)** Rev. 10-12

Page 3 of 34

0901119c9367aaf3

USAA Confidential

2. **We** will automatically provide for the **newly acquired vehicle** the broadest coverages as are provided for any vehicle shown on the Declarations. If **your** policy does not provide Comprehensive Coverage or Collision Coverage, **we** will automatically provide these coverages for the **newly acquired vehicle** subject to a $500 deductible for each loss.

3. Any automatic provision of coverage under J.2. will apply for up to 30 days after the date **you** or any **family member** becomes the owner of the **newly acquired vehicle**. If **you** wish to continue coverage for the **newly acquired vehicle** beyond this 30–day period, **you** must request it during this 30–day period, and **we** must agree to provide the coverage **you** request for this vehicle. If **you** request coverage after this 30–day period, any coverage that **we** agree to provide will be effective at the date and time of **your** request unless **we** agree to an earlier date.

K. **"Occupying"** means in, on, getting into or out of.

L. **"Property damage"** (referred to as **PD**).

1. **"Property damage"** means physical injury to, destruction of, or loss of use of tangible property.

2. For purposes of this policy, electronic data is not tangible property. Electronic data means information, facts or programs:

   a. Stored as or on;

   b. Created or used on; or

   c. Transmitted to or from;

   computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

M. **"Trailer"** means a vehicle designed to be pulled by a private passenger auto, pickup, **van** or **miscellaneous vehicle**. It also means a farm wagon or implement while towed by such vehicles.

N. **"Van"** means a four-wheeled land motor vehicle of the van type with a load capacity of not more than 2,000 pounds.

O. **"Your covered auto"** means:

1. Any vehicle shown on the Declarations.

2. Any **newly acquired vehicle**.

3. Any **trailer you** own.

## PART A – LIABILITY COVERAGE

**DEFINITIONS**

**"Covered person"** as used in this Part means:

1. **You** or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

2. Any person using **your covered auto**.

3. Any other person or organization, but only with respect to legal liability imposed on them for the acts or omissions of a person for whom

coverage is afforded in 1. or 2. above. With respect to an auto or **trailer** other than **your covered auto**, this provision only applies if the other person or organization does not own or hire the auto or **trailer**.

The following are not **covered persons** under Part A:

1. The United States of America or any of its agencies.

**5100FL(02)** Rev. 10-12

Page 4 of 34

**(PART A Cont'd.)**

2. Any person with respect to **BI** or **PD** resulting from the operation of an auto by that person as an employee of the United States Government. This applies only if the provisions of Section 2679 of Title 28, United States Code as amended, require the Attorney General of the United States to defend that person in any civil action which may be brought for the **BI** or **PD**.

## INSURING AGREEMENT

**We** will pay compensatory damages for **BI** or **PD** for which any **covered person** becomes legally liable because of an auto accident. **We** will settle or defend, as **we** consider appropriate, any claim or suit asking for these damages. **Our** duty to settle or defend ends when **our** limit of liability for these coverages has been paid or tendered. **We** have no duty to defend any suit or settle any claim for **BI** or **PD** not covered under this policy.

## LIMIT OF LIABILITY

For **BI** sustained by any one person in any one auto accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for **BI** Liability.

Subject to this limit for "each person," the limit of liability shown on the Declarations for "each accident" for **BI** Liability is **our** maximum limit of liability for all damages for **BI** resulting from any one auto accident. The limit of liability shown on the Declarations for "each accident" for **PD** Liability is **our** maximum limit of liability for all damages to all property resulting from any one auto accident.

These limits are the most **we** will pay regardless of the number of:

1. **Covered persons**;

2. Claims made;

3. Vehicles or premiums shown on the Declarations; or

4. Vehicles involved in the auto accident.

However, if a policy provision that would defeat coverage for a claim under this Part is declared to be unenforceable as a violation of the state's financial responsibility law, **our** limit of liability will be the minimum required by the state's financial responsibility law.

## SUPPLEMENTARY PAYMENTS

In addition to **our** limit of liability, **we** will pay on behalf of a **covered person**:

1. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. But **we** will not pay the premium for bonds with a face value over **our** limit of liability shown on the Declarations.

2. Prejudgment interest awarded against the **covered person** on that part of the judgment **we** pay. If **we** make an offer to pay the applicable limit of liability, **we** will not pay any prejudgment interest based on that period of time after the offer.

3. Interest accruing, in any suit **we** defend, on that part of a judgment that does not exceed **our** limit of liability. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment that does not exceed **our** limit of liability.

4. Up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

5. The amount a **covered person** must pay to the United States Government because of damage to a government-owned private passenger auto, pickup, or **van** which occurs while the vehicle is in the care, custody, or control of a **covered person**. The most **we** will pay is an amount equal to one month of the basic salary of the **covered person** at the time of a loss. Only Exclusions A.1. and A.8. apply.

6. Other reasonable expenses incurred at **our** request.

**5100FL(02)** Rev. 10-12

0901119c9367aaf3

USAA Confidential

**(PART A Cont'd.)**

7. All defense costs **we** incur.

## EXCLUSIONS

A. **We** do not provide Liability Coverage for any **covered person**:

1. Who intentionally acts or directs to cause **BI** or **PD**, or who acts or directs to cause with reasonable expectation of causing **BI** or **PD**.

2. For **PD** to property owned or being transported by a **covered person**.

3. For **PD** to property rented to, used by, or in the care of any **covered person**. This exclusion (A.3.) does not apply to damage to a residence or garage.

4. For **BI** to an employee of that person which occurs during the course of employment. This exclusion (A.4.) does not apply to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that person's liability arising out of the ownership or operation of a vehicle while it is being used to carry persons for a fee. This exclusion (A.5.) does not apply to:

    a. A share-the-expense car pool; or

    b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

6. While employed or otherwise engaged in the **auto business**. This exclusion (A.6.) does not apply to the ownership, maintenance, or use of **your covered auto** by you, any **family member**, or any partner, agent, or employee of **you** or any **family member**.

7. Maintaining or using any vehicle while that person is employed or otherwise engaged in any business or occupation other than the **auto business**, farming, or ranching. This exclusion (A.7.) does not apply:

    a. To the maintenance or use of a private passenger auto; a pickup or **van** owned by **you** or any **family member**; or a **trailer** used with these vehicles; or

    b. To the maintenance or use of a pickup or **van** not owned by **you** or any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

8. Using a vehicle without expressed or implied permission.

9. For **BI** or **PD** for which that person is an insured under any nuclear energy liability policy. This exclusion (A.9.) applies even if that policy is terminated due to exhaustion of its limit of liability.

10. For **BI** or **PD** occurring while **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. For punitive or exemplary damages.

12. For **BI** sustained as a result of exposure to **fungi**, wet or dry rot, or bacteria.

13. For **BI** to a relative who resides primarily in that **covered person's** household.

B. **We** do not provide Liability Coverage for the ownership, maintenance, or use of:

1. Any vehicle that is not **your covered auto** unless that vehicle is:

    a. A four- or six-wheel land motor vehicle designed for use on public roads;

    b. A moving van for personal use;

    c. A **miscellaneous vehicle**; or

    d. A vehicle used in the business of farming or ranching.

**5100FL(02)** Rev. 10-12                                                                              Page 6 of 34

0901119c9367aaf3                          USAA Confidential

**(PART A Cont'd.)**

2. Any vehicle, other than **your covered auto**:

    a. That has fewer than four wheels; or

    b. That is designed mainly for use off public roads.

    This exclusion (B.2.) does not apply while the vehicle is being used in a medical emergency.

3. Any vehicle, other than **your covered auto**, that is owned by **you**, or furnished or available for **your** regular use. This exclusion (B.3.) does not apply to a vehicle not owned by **you** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

4. Any vehicle, other than **your covered auto**, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (B.4.) does not apply:

    a. To **your** maintenance or use of such vehicle; or

    b. To a vehicle not owned by any **family member** if the vehicle's owner has valid and collectible primary liability insurance or self-insurance in force at the time of the accident.

5. Any vehicle while being operated in, or in practice for, any **driving contest or challenge**.

C. There is no coverage for liability assumed by any **covered person** under any contract or agreement.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **your** policy will provide at least the minimum amounts and types of liability coverages required by law. However, no one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY REQUIRED

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

A. If there is other applicable liability insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. With respect to a vehicle **you** or a **family member** does not own, any insurance **we** provide to a **covered person** shall be excess over:

    1. Any other applicable liability insurance; or

    2. Any self-insurance in compliance with a state's financial responsibility law or mandatory insurance law.

    However, with respect to a vehicle leased or rented by **you**, if **you** have agreed to provide primary coverage in a written lease or rental agreement, the coverage provided by this policy is primary, but only for the minimum limits required by the Florida Financial Responsibility law and the Florida Motor Vehicle No-Fault Law.

**5100FL(02)** Rev. 10-12

Page 7 of 34

0901119c9367aaf3

USAA Confidential

## PART B-1 – PERSONAL INJURY PROTECTION COVERAGE
### (Referred to as PIP Coverage)

**DEFINITIONS**

A. **"Covered person"** as used in this Part means:

    1. **You** or any **family member:**

        a. While **occupying your covered auto** within the United States or Canada;

        b. While **occupying** any **motor vehicle** within the State of Florida; or

        c. As a **pedestrian**, for BI caused by physical contact with a **motor vehicle** and resulting from an accident occurring within the State of Florida.

    2. Any other person while **occupying** or when struck by **your covered auto** within the State of Florida. However, this (A.2.) does not apply if the person is:

        a. An **owner** of a **motor vehicle** for which security is required under the Florida Motor Vehicle No-Fault Law; or

        b. An insured entitled to receive PIP benefits from the **motor vehicle** owner's insurer.

B. **"Emergency medical condition"** means a medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

    1. Serious jeopardy to patient health;

    2. Serious impairment to bodily functions; or

    3. Serious dysfunction of any bodily organ or part.

C. **"Entity wholly owned"** means a proprietorship, group practice, partnership, or corporation that provides health care services rendered by licensed health care practitioners and in which licensed health care practioners are the business owners of all aspects of the business entity, including, but not limited to, being reflected as the business owners on the title or lease of the physical facility, filing taxes as the business owners, being account holders on the entity's bank account, being listed as the principals on all incorporation documents required by this state, and having ultimate authority over all personnel and compensation decisions relating to the entity. However, this definition does not apply to an entity that is wholly owned, directly or indirectly, by a hospital licensed under chapter 395.

D. **"Family member"** as used in this Part means a relative of any degree by blood, marriage, or by adoption, who usually makes his or her home in the same family unit, whether or not temporarily living elsewhere.

E. **"Medically necessary."**

    1. **"Medically necessary"** refers to a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

        a. In accordance with generally accepted standards of medical practice;

        b. Clinically appropriate in terms of type, frequency, extent, site, and duration; and

        c. Not primarily for the convenience of the patient, physician, or other health care provider.

**5100FL(02)** Rev. 10-12

Page 8 of 34

0901119c9367aaf3

**USAA Confidential**

(PART B-1 Cont'd.)

2. "**Medically necessary**" does not include the following:

    a. Spinal ultrasound, also known as sonography, ultrasonography, and echography;

    b. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining bodily injury covered by personal injury protection benefits; and

    c. Dermatomal Evoked Potential.

F. "**Medical benefits**" means **reasonable fees** for **medically necessary** medical, surgical, X-ray, dental, and rehabilitative services, including prosthetic devices, and **medically necessary** ambulance, hospital, and nursing services if the individual receives initial services and care pursuant to F.1. below within 14 days after the motor vehicle accident. The **medical benefits** provide reimbursement only for:

    1. Initial services and care that are lawfully provided, supervised, ordered, or prescribed by a physician licensed under chapter 458 or chapter 459, a dentist licensed under chapter 466, or a chiropractic physician licensed under chapter 460 or that are provided in a hospital or in a facility that owns, or is wholly owned by, a hospital. Initial services and care may also be provided by a person or entity licensed under part III or chapter 401 which provides emergency transportation and treatment.

    2. Upon referral by a provided described in F.1., follow-up services and care consistent with the underlying medical diagnosis rendered pursuant to F.1. which may be provided, supervised, ordered, or prescribed only by a physician licensed under chapter 458 or chapter 459, a chiropractic physician licensed under chapter 460, a dentist licensed under chapter 466, or, to the extent permitted by applicable law and under the supervision of such physician,

osteopathic physician, chiropractic physician, or dentist, by a physician assistant licensed under chapter 458 or chapter 459 or an advanced registered nurse practitioner licensed under chapter 464. Follow-up services and care may also be provided by any of the following persons or entities:

a. A hospital or ambulatory surgical center licensed under chapter 395.

b. An **entity wholly owned** by one or more physicians licensed under chapter 458 or 459, chiropractic physicians licensed under chapter 460, or dentists licensed under chapter 466 or by such practitioners and the spouse, parent, child, or sibling of such practitioners.

c. An entity that owns or is wholly owned, directly or indirectly, by a hospital or hospitals.

d. A physical therapist licensed under chapter 486, based upon a referral by a provider described in F.2.

e. A health care clinic licensed under part X of chapter 400 which is accredited by the Joint Commission on Accreditation of Healthcare Organizations, the American Osteopathic Association, the Commission on Accreditation of Rehabilitation Facilities, or the Accreditation Association for Ambulatory Health Care, Inc.; or

    (1) Has a medical director licensed under chapter 485, chapter 459, or chapter 460;

    (2) Has been continuously licensed for more than 3 years or is a publicly traded corporation that issues securities traded on an exchange registered with the United States Securities and Exchange Commission as a national securities exchange; and

USAA Confidential

**(PART B-1 Cont'd.)**

    (3) Provides at least four of the
       following medical specialties:

       (a) General medicine;

       (b) Radiography;

       (c) Orthopedic medicine;

       (d) Physical medicine;

       (e) Physical therapy;

       (f) Physical rehabilitation;

       (g) Prescribing or dispensing
           outpatient prescription
           medication;

       (h) Laboratory services.

3. Reimbursement for services and care
provided in F.1. or F.2. up to $10,000 if
a physician licensed under chapter 458
or chapter 459, a dentist licensed under
chapter 466, a physician assistant
licensed under chapter 458 or 459, or
an advanced registered nurse
practitioner licensed under chapter 464
has determined that the injured person
had an **emergency medical condition**.

4. Reimbursement for services and care
provided in F.1. or F.2. is limited to
$2,500 if any provider listed in F.1. or
F.2. determines that the injured person
did not have an **emergency medical
condition**.

5. **Medical benefits** do not include
massage as defined in s. 480.033 or
acupuncture as defined in s. 457.102,
regardless of the person, entity, or
licensee providing massage or
acupuncture, and a licensed massage
therapist or licensed acupuncturist may
not be reimbursed for **medical
benefits** under this section.

G. **"Motor vehicle."**

1. **"Motor vehicle"** means any
self-propelled vehicle with four or
more wheels which is of a type both
designed and required to be licensed
for use on the highways of the State of
Florida and any **trailer** or semi-trailer
designed for use with such vehicle.

2. **"Motor vehicle"** does not include a
mobile home or any vehicle, other than a
**motor vehicle** used in public school
transportation:

    a. Which is used as mass transit and
       designed to transport more than five
       passengers exclusive of the
       operator of the vehicle; and

    b. Owned by a municipality, a transit
       authority, or a political subdivision
       of the state.

H. **"Owner"** means a person or organization
who holds the legal title to a **motor
vehicle**, and also includes:

1. A debtor having the right to possession,
in the event a **motor vehicle** is the
subject of a security agreement; and

2. A lessee having the right to possession,
in the event a **motor vehicle** is the
subject of a lease with option to
purchase and such lease agreement is
for a period of six months or more; and

3. A lessee having the right to possession,
in the event a **motor vehicle** is the
subject of a lease without option to
purchase, and such lease agreement is
for a period of six months or more, and
the lease agreement provides that the
lessee shall be responsible for securing
insurance.

I. **"Pedestrian"** means a person while not
**occupying** any self-propelled vehicle.

J. **"Reasonable accessible"** means any
location within the municipality where the
**covered person** is receiving treatment, or
in which the **covered person** resides, or
within 10 miles by road of a **covered
person's** residence, provided such location
is within the county in which the **covered
person** resides.

If there is no qualified physician to conduct
the examination in a location **reasonably
accessible** to the **covered person**, then
such examination shall be conducted in an
area of the closest proximity to the
insured's residence.

**5100FL(02)** Rev. 10-12

0901119c9367aaf3                    **USAA Confidential**

printing document

**(PART B-1 Cont'd.)**

K. **"Reasonable fee"** is no more than 80 percent of the following schedule of maximum charges:

1. Two hundred (200) percent of Medicare for emergency transport and treatment by providers licensed under chapter 401.

2. Seventy-five (75) percent of the hospital's usual and customary charges for emergency services and care provided by a hospital licensed under chapter 395.

3. The usual and customary charges in the community for emergency services and care as defined by s. 395.002 provided in a facility licensed under chapter 395 rendered by a physician or dentist, and related hospital inpatient services rendered by a physician or dentist.

4. Two hundred (200) percent of Medicare Part A prospective payment applicable to the specific hospital providing the inpatient services for hospital inpatient services, other than emergency services and care.

5. Two hundred (200) percent of Medicare Part A Ambulatory Payment Classification for the specific hospital providing the outpatient services for hospital outpatient services, other than emergency services and care.

6. For all other medical services, supplies and care, two hundred (200) percent of the allowable amount under:

   a. Medicare Part B, except as provided in 6.b and 6.c. below;

   b. Medicare Part B, in the case of services, supplies, and care provided by ambulatory surgical centers and clinical laboratories;

   c. The Durable Medical Equipment Prosthetics/Orthotics and Supplies fee schedule of Medicare Part B, in the case of durable medical equipment; or

   d. If such services, supplies or care are not reimbursable under Medicare Part B, we may limit reimbursement to 80 percent of the maximum reimbursable allowance under workers' compensation, as determined under s. 440.13 and rules adopted thereunder which are in effect at the time such services, supplies, or care are provided.

   For purposes of this definition (K), the applicable fee schedule or payment limitation under Medicare is the fee schedule or payment limitation in effect on March 1 of the year in which the services, supplies or care is rendered and for the area in which such services are rendered, and the applicable fee schedule or payment limitation applies throughout the remainder of that year, notwithstanding any subsequent change made to the fee schedule or payment limitation, except that it may not be less than the applicable schedule of Medicare Part B for 2007 for medical services, supplies and care subject to Medicare Part B.

L. **"Replacement services expenses"** means, with respect to the period of disability of the **covered person**, all expenses reasonably incurred in obtaining from others ordinary and necessary services in lieu of those that, but for such injury, the **covered person** would have performed without income for the benefit of the **covered person's** household.

M. **"Work loss"** means, with respect to the period of disability of the **covered person**, 60 percent of gross income and earning capacity from inability to work proximately caused by the BI sustained by the **covered person**. However, **"work loss"** does not include any loss after death of a **covered person**.

N. **"Your covered auto"** as used in this Part does not include any **miscellaneous vehicle** or **motorcycle** for which security is not required under the Florida Motor Vehicle No-Fault Law.

**5100FL(02)** Rev. 10-12

0901119c9367aaf3

USAA Confidential

**(PART B–1 Cont'd.)**

**INSURING AGREEMENT**

A. **We** will pay, in accordance with the Florida Motor Vehicle No–Fault Law, as amended, to or for the benefit of the **covered person:**

   1. **Medical benefits;** and

   2. **Work loss;** and

   3. **Replacement services expenses;** and

   4. Death benefits of $5,000. Death benefits are in addition to the **medical benefits, work loss** and **replacement services expenses** provided under the insurance policy.

   These must be incurred as a result of BI (1) caused by an accident arising out of the ownership, maintenance, or use of a **motor vehicle** and (2) sustained by a **covered person.**

B. **We** will not be liable for subsequent PIP benefits if a **covered person** unreasonably refuses to submit to an examination as required in Part E - General Provisions, Duties After an Accident or Loss.

C. Whenever a person making a claim is charged with committing a felony, **we** shall withhold PIP benefits until 30 days after **we** receive notice that the prosecution, at the trial level, makes a formal entry on the record that it will not prosecute the case against the person, the charge is dismissed, or the person is acquitted.

D. **We** or someone on **our** behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are **reasonable fees** for **medically necessary** and appropriate services or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount **we** determine to be **reasonable fees** and reasonable expenses, but such additional charges are not covered.

E. If the service provider sues the **covered person** because **we** refuse to pay expenses that **we** determine are unreasonable or unnecessary, **we** will settle or defend the suit, as **we** consider appropriate. **We** will pay defense costs and any resulting settlement or judgment against the **covered person** for reasonable and necessary expenses, subject to the limit of liability for this coverage. The **covered person** must cooperate with **us** in the defense of any claim or lawsuit. **We** will also pay a **covered person** up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

F. **We** may utilize Medicare coding policies and payment methodologies of the federal Centers for Medicare and Medicaid Services, including applicable modifiers, to determine the appropriate amount of reimbursement for medical services, supplies or care if the coding policy or payment methodology does not constitute a utilization limit.

**LIMIT OF LIABILITY**

A. Regardless of the number of **covered persons**, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident, the total aggregate limit of PIP benefits available under Florida Motor Vehicle No–Fault Law, as amended, from all sources combined, including this policy, for all loss and expense incurred by or on behalf of any one person who sustains BI as the result of one accident shall not exceed the amount indicated on the Declarations.

B. Any amount payable under PIP Coverage shall be reduced by the amount of benefits a **covered person** has recovered or is entitled to recover for the same elements of loss under the workers' compensation laws of any state or the Federal Government.

**5100FL(02)** Rev. 10-12

Page 12 of 34

0901119c9367aaf3

USAA Confidential

**(PART B-1 Cont'd.)**

C. **We** will reserve $5,000 of PIP benefits for payment to physicians licensed under chapter 458 or chapter 459 or dentists licensed under chapter 466 who provide emergency services and care, as defined in s. 395.002, or who provide hospital inpatient care. The amount held in reserve will be used only to pay claims from such physicians or dentists until 30 days after the date we receive notice of the accident. After the 30-day period, any amount of the reserve for which we have not received notice of such claims may be used to pay other PIP benefits for loss or expense incurred because of the accident.

## APPLICATION OF DEDUCTIBLE

The amount of any deductible stated on the Declarations, incurred by or on behalf of each person to whom the deductible applies and who sustains **BI** as a result of any one accident, shall be deducted from 100% of the **medical benefits**, work loss, and **replacement services** expenses described in F.S. s. 627.736(1) before the application of any percentage limitation that may result because of the lack of Medical Payments benefits coverage. Such deductible shall not apply to:

1. The death benefit; or

2. Any person determined eligible pursuant to the Florida Crime Compensation Act, excluding s. 960.28 of the act.

## EXCLUSIONS

A. **We** do not provide PIP Coverage for **BI** sustained by any **covered person**:

1. While occupying a motor vehicle you own that is not **your covered auto** under this Part;

2. While occupying, or when struck by, any vehicle, other than **your covered auto**, that is owned by or furnished or available for the regular use of, any **family member**. This exclusion (A.2.)

does not apply to **you**.

3. While operating **your covered auto** without expressed or implied consent;

4. If that **covered person** intentionally caused the **BI**;

5. While committing a felony;

6. For **work loss** if an entry on the Declarations indicates such coverage does not apply; or

7. While **occupying** a **motor vehicle** located for use as a residence or premises.

B. **We** will not pay benefits under PIP Coverage for services, supplies or care that is not reimbursable under Medicare or Florida workers' compensation law.

C. **We** will not pay benefits under PIP Coverage for any person:

1. Entitled to PIP benefits from:

   a. The owner of a **motor vehicle** other than **you**; or

   b. That owner's insurer.

2. Who owns an uninsured motor vehicle subject to the Florida Motor Vehicle No-Fault Law, as amended.

## OTHER INSURANCE

A. If there is other applicable PIP Coverage, **we** will pay only **our** share of the loss and of expenses incurred in processing the claim. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits.

B. If a **covered person** is injured while **occupying**, or when struck by, a **motor vehicle** rented or leased under a rental or lease agreement, PIP Coverage under the lessor's policy will be primary unless a statement in bold type on the face of the rental or lease agreement, specifies that PIP Coverage afforded under the lessor's policy shall be excess.

**5100FL(02) Rev. 10-12**

Page 13 of 34

0901119c9367aaf3

USAA Confidential

# PART B-2 - MEDICAL PAYMENTS COVERAGE

**DEFINITIONS**

A. **"Covered person"** as used in this Part means:

   1. **You** or any **family member** while **occupying** any auto.

   2. Any other person while **occupying your covered auto.**

   3. **You** or any **family member** while not **occupying** a motor vehicle if injured by:

      a. A motor vehicle designed for use mainly on public roads;

      b. A **miscellaneous vehicle**; or

      c. A **trailer.**

B. **"Medical payment fee"** is an amount, as determined by **us** or someone on **our** behalf, that **we** will pay for charges made by a licensed hospital, licensed physician, or other licensed medical provider for **medically necessary and appropriate medical services.** The amount that **we** will pay will be one of the following:

   1. The amount provided by an applicable agreement with a Preferred Provider Organization, Preferred Provider Network, or other similar agreement; or

   2. The amount required, approved, or allowed by a fee schedule established by a state, federal, or other governmental entity in the relevant geographic area; or

   3. The amount negotiated with the provider; or

   4. The lesser of the following:

      a. The actual amount billed; or

      b. A reasonable fee for the service provided.

C. **"Medically necessary and appropriate medical services"** are those services or supplies provided or prescribed by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by **us** or someone on **our** behalf, are required to identify or treat **BI** caused by an auto accident and sustained by a **covered person** and that are:

   1. Consistent with the symptoms, diagnosis, and treatment of the **covered person's** injury and appropriately documented in the **covered person's** medical records;

   2. Provided in accordance with recognized standards of care for the **covered person's** injury at the time the charge is incurred;

   3. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;

   4. Not primarily for the convenience of the **covered person**, his or her physician, hospital, or other health care provider;

   5. The most appropriate supply or level of service that can be safely provided to the **covered person**; and

   6. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment.

However, **"medically necessary and appropriate medical services"** do not include the following:

   1. Nutritional supplements or over-the-counter drugs;

**5100FL(02)** Rev. 10-12

Page 14 of 34

0901119c9367aaf3

USAA Confidential

(PART B-2 Cont'd.)

2. Experimental services or supplies, which means services or supplies that **we** determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed;

3. Inpatient services or supplies provided to the **covered person** when these could safely have been provided to the **covered person** as an outpatient;

4. Spinal ultrasound, also known as sonography, ultrasonography and echography;

5. Surface EMG;

6. Somatosensory Evoked Potential for use in the diagnosis of radiculopathy or distal nerve entrapment when treating persons sustaining **BI** covered by Medical Payments Coverage; and

7. Dermatomal Evoked Potential.

**INSURING AGREEMENT**

A. **We** will pay only the **medical payment fee** for medically necessary and appropriate **medical services** and the reasonable expense for funeral services. These fees and expenses must:

1. Result from **BI** sustained by a **covered person** in an auto accident; and

2. Be incurred for services rendered within three years from the date of the auto accident.

B. **We** or someone on **our** behalf will review, by audit or otherwise, claims for benefits under this coverage to determine if the charges are **medical payment fees** for medically necessary and appropriate **medical services** or reasonable expenses for funeral services. A provider of medical or funeral services may charge more than the amount we determine to be **medical payment** fees and reasonable expenses, but such additional charges are not covered.

For purposes of this Part, **we** shall not be considered to have been furnished with notice of the amount of a covered loss or medical bills due unless the statements or bills are properly completed in their entirety, with all relevant information being provided.

1. All statements and bills for medical services rendered by any physician, hospital, clinic, or other person or institution shall be submitted to **us** on a properly completed:

   a. Centers for Medicare and Medicaid Services (CMS) 1500 form; or

   b. UB 92 form.

2. For purposes of this Part, "properly completed" means that the billing shall, to the extent applicable, use the following in effect for the year in which services are rendered:

   a. The Physicians' Current Procedural Terminology (CPT);

   b. Healthcare Correct Procedural Coding System (HCPCS); and

   c. ICD-9.

3. In addition to the references shown in B.2.a. through B.2.c. above, **we**, or someone on **our** behalf, may seek guidance from one or more of the following to determine whether a form is "properly completed":

   a. The Office of the Inspector General (OIG);

   b. Physicians Compliance Guidelines; and

   c. Other authoritative treatises designated by rule by the Agency for Health Care Administration.

5100FL(02) Rev. 10-12

Page 15 of 34

0901119c9367aaf3

USAA Confidential

**(PART B-2 Cont'd.)**

4. All providers, other than hospitals, shall include on the applicable claim form the professional license number of the provider in the line or space provided for "Signature of Physician or Supplier, Including Degrees or Credentials."

5. No statement of medical services may include charges for medical services performed by a person or entity unless that person or entity possesses the valid licenses required to perform such services.

C. If the service provider sues the **covered person** because we refuse to pay expenses that we determine are unreasonable or unnecessary, we will settle or defend the suit, as we consider appropriate. **We** will pay defense costs and any resulting settlement or judgment against the **covered person** for reasonable and necessary expenses, subject to the limit of liability for this coverage. The **covered** person must cooperate with us in the defense of any claim or lawsuit. **We** will also pay a **covered person** up to $250 a day for loss of wages because of attendance at hearings or trials at **our** request.

D. **We** will not be liable for pending or subsequent benefits if a **covered person** or assignee of benefits under Medical **Payments** Coverage refuses to submit to an examination as required in Part E - General Provisions, Duties After an Accident or Loss.

**LIMIT OF LIABILITY**

A. The limit of liability shown on the Declarations for Medical Payments Coverage is the maximum limit of liability for each covered **person** injured in any one accident. This is the most we will pay regardless of the number of **covered persons**, claims made, vehicles or premiums shown on the Declarations, or vehicles involved in an auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A or Part C of this policy.

**EXCLUSIONS**

**We** do not provide benefits under this Part for any **covered person** for **BI**:

1. Sustained while **occupying** any vehicle that is not **your covered auto** unless that vehicle is:

   a. A four- or six-wheel land motor vehicle designed for use on public roads;

   b. A moving van for personal use;

   c. A **miscellaneous vehicle**; or

   d. A vehicle used in the business of farming or ranching.

2. Sustained while **occupying your covered auto** when it is being used to carry persons for a fee. This exclusion (2.) does not apply to:

   a. A share-the-expense car pool; or

   b. **Your covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

3. Sustained while **occupying** any vehicle located for use as a residence.

4. Occurring during the course of employment if workers' compensation benefits are required or available.

5. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by **you**.

6. Sustained while **occupying**, or when struck by, any vehicle, other than **your covered auto**, that is owned by any **family member**. This exclusion (6.) does not apply to **you**.

7. Sustained while **occupying** a vehicle without expressed or implied permission.

**5100FL(02)** Rev. 10-12

Page 16 of 34

0901119c9367aaf3

USAA Confidential

**(PART B-2 Cont'd.)**

8. Sustained while **occupying** a vehicle when it is being used in the business or occupation of a **covered person**. This exclusion (8.) does not apply to BI sustained while **occupying** a private passenger auto, pickup or **van**, or a **trailer** used with these vehicles.

9. Caused by or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

10. Sustained while **occupying your covered** auto while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

11. Sustained while a participant in, or in practice for, any **driving contest or challenge.**

12. Sustained as a result of a **covered person's** exposure to fungi, wet or dry rot, or bacteria.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance, **we** will pay only **our** share of the loss. Our share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a vehicle **you** do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## SPECIAL PROVISIONS

A. If **your covered auto** and every other motor vehicle **you** own are within the policy territory referred to in Part E – General Provisions, then coverage under Part B-2 - Medical Payments Coverage will apply to **you** and any **family member** anywhere in the world.

B. Payment under Part B-2 - Medical Payments Coverage shall be applied to that portion of any claim for PIP medical expenses that is otherwise covered but not payable under PIP Coverage due to the limitation of 80% of medical expenses, regardless of whether the full amount of PIP benefits have been exhausted. However, Medical Payments Coverage shall not be payable for the amount of any deductible which has been selected under PIP Coverage.

---

## PART C - UNINSURED MOTORISTS COVERAGE
### (referred to as UM Coverage)

---

UM Coverage includes underinsured motorists coverage.

## DEFINITIONS

A. **"Covered person"** as used in this Part means:

1. **You** or any **family member.**

2. Any other person **occupying your covered** auto.

3. Any person for damages that person is entitled to recover because of BI to which this coverage applies sustained by a person described in 1. or 2. above.

However, **"covered person"** does not include the United States of America or any of its agencies.

B. **"Uninsured Motor Vehicle."**

1. **"Uninsured motor vehicle"** means a land motor vehicle or **trailer** of any type:

   a. To which no liability bond or policy applies at the time of the accident.

   b. To which a liability bond or policy applies at the time of the accident but its limit for bodily injury liability is not enough to pay the full amount the **covered person** is legally entitled to recover as damages.

**5100FL(02)** Rev. 10-12

Page 17 of 34

0901119c9367ae43

USAA Confidential

**(PART C Cont'd.)**

c. That is a hit-and-run motor vehicle. This means a motor vehicle whose owner or operator cannot be identified and that hits or that causes an accident resulting in BI without hitting:

(1) **You** or any **family member;**

(2) A vehicle **you** or any **family member** is **occupying;** or

(3) **Your covered auto.**

d. To which a liability bond or policy applies at the time of the accident but the bonding or insuring company denies coverage or is or becomes insolvent within 4 years after the accident.

2. **"Uninsured motor vehicle"** does not include any vehicle or equipment:

a. Owned by or furnished or available for the regular use of **you** or any **family member.** This exclusion (2.a.) does not apply:

(1) If the vehicle or equipment is **your covered auto** to which Part A of this policy applies; and

(2) Liability coverage is excluded for any person other than **you** or any **family member** for damages sustained in the accident by **you** or any **family member.**

b. Operated on rails or crawler treads, except for a snowmobile.

c. Designed mainly for use off public roads while not on public roads.

d. While located for use as a residence or premises.

**INSURING AGREEMENT**

A. **We** will pay compensatory damages which a **covered person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **BI**

sustained by a **covered person** and caused by an auto accident. However, **we** will not pay damages for pain, suffering, mental anguish, or inconvenience unless the BI consists in whole or in part of:

1. Significant and permanent loss of an important bodily function;

2. Permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement;

3. Significant and permanent scarring or disfigurement; or

4. Death.

B. The owner's or operator's liability for these damages must arise out of the ownership, maintenance, or use of the **uninsured motor vehicle.** Any judgment for damages arising out of a suit brought without **our** written consent is not binding on **us.**

**LIMIT OF LIABILITY (STACKED)**

A. Accidents involving BI to **you** or any **family member.**

1. For BI sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage, multiplied by the number of premiums shown in the Declarations for UM Coverage. Subject to this limit for "each person," **our** maximum limit of liability for all damages for **BI** resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage multiplied by the number of premiums shown on the Declarations for UM Coverage.

**5100FL(02)** Rev. 10-12

Page 18 of 34

0901119c9367aaf3

USAA Confidential

**(PART C Cont'd.)**

2. Notwithstanding the maximum limits of liability for "each person" and "each accident" set forth in A.1. above, for **BI** sustained in any one accident by a **covered person** other than **you** or any **family member, our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons is the lesser of:

   a. The "each person" limit of liability for UM Coverage shown on the Declarations applicable to the vehicle that person was **occupying** at the time of the accident; or

   b. That **covered person's** pro-rata share of the "each accident" limit of liability for UM Coverage shown on the Declarations applicable to that vehicle.

**You** or any **family member** who sustains **BI** in the accident will also be entitled to a pro-rata share of the "each accident" limit of liability applicable to that vehicle. A person's pro-rata share is the proportion that that person's damages bears to the total damages sustained by all **covered persons.**

3. These limits are the most **we** will pay, regardless of the number of:

   a. **Covered persons;**

   b. Claims made; or

   c. Vehicles involved in the accident.

B. Accidents not involving BI to **you** or any **family member.**

1. For **BI** sustained by any one person in any one accident, **our** maximum limit of liability for all resulting damages, including, but not limited to, all direct, derivative, or consequential damages recoverable by any persons, is the limit of liability shown on the Declarations for "each person" for UM Coverage.

Subject to this limit for "each person", **our** maximum limit for all damages for **BI** resulting from any one accident is the limit of liability shown on the Declarations for "each accident" for UM Coverage.

2. These limits are the most **we** will pay, regardless of the number of:

   a. **Covered persons;**

   b. Claims made;

   c. Vehicles or premiums shown on the Declarations;

   d. Premiums paid; or

   e. Vehicles involved in the accident.

C. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid or payable because of the **BI:**

1. Under any workers' compensation law, disability benefits law, or similar law; or

2. Under any PIP Coverage, automobile medical expense coverage, or motor vehicle liability insurance.

D. Any amount otherwise payable for damages under UM Coverage shall be reduced by all sums paid because of the **BI** by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A.

**EXCLUSIONS**

A. We do not provide UM Coverage for **BI** sustained by any **covered person:**

1. If that person or legal representative settles the **BI** claim without **our** written consent. However, this exclusion (A.1.) does not apply:

   a. If such settlement does not prejudice **our** right to recover payment; or

**5100FL(02)** Rev. 10-12

Page 19 of 34

0901119c9367aaf3

USAA Confidential

**(PART C** Cont'd.)

    b. If that person or legal representative provides **us** with advance notice of any proposed settlement as required by Part E - General Provisions, Duties After an Accident or Loss.

    2. While occupying **your covered auto** when it is being used to carry persons for a fee. This exclusion (A.2.) does not apply to:

      a. A share-the-expense car pool; or

      b. Your **covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

    3. Using a vehicle without expressed or implied permission.

    4. While **your covered auto** is rented or leased to others, or shared as part of a personal vehicle sharing program.

    5. While occupying any vehicle when it is being operated in, or in practice for, any driving contest or challenge.

**B.** UM Coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any workers' compensation law or similar disability benefits law.

**C. We** do not provide UM Coverage for punitive or exemplary damages.

**OTHER INSURANCE**

If there is other applicable UM Coverage available under one or more policies or provisions of coverage:

    1. Any insurance we provide with respect to a vehicle **you** do not own or to a person other than **you** or any **family member** will be excess over any collectible insurance.

    2. If the coverage under this policy is provided:

    a. On a primary basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on a primary basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

    b. On an excess basis, **we** will pay only **our** share of the loss that must be paid under insurance providing coverage on an excess basis. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits of liability of coverage provided on an excess basis.

**NON-DUPLICATION**

No **covered person** will be entitled to receive duplicate payments under this coverage for the same elements of loss which were:

    1. Paid because of the **BI** by or on behalf of persons or organizations who may be legally responsible.

    2. Paid or payable under any workers' compensation law or similar disability benefits law.

    3. Paid under another provision or coverage in this policy.

    4. Paid under any PIP Coverage or under any automobile medical expense coverage.

**5100FL(02)** Rev. 10-12

Page 20 of 34

0901119c9367aaf3

USAA Confidential

# PART D – PHYSICAL DAMAGE COVERAGE

## DEFINITIONS

A. **"Actual cash value"** means the amount that it would cost, at the time of **loss**, to buy a comparable vehicle. As applied to **your covered auto**, a comparable vehicle is one of the same make, model, model year, body type, and options with substantially similar mileage and physical condition.

B. **"Collision"** means the impact with an object and includes upset of a vehicle. **Loss** caused by the following is covered under Comprehensive Coverage and is not considered collision: fire; missiles or falling objects; hail, water or flood; malicious mischief or vandalism; theft or larceny; riot or civil commotion; explosion or earthquake; contact with bird or animal; windstorm; or breakage of window glass. If breakage of window glass is caused by a **collision**, you may elect to have it considered a loss caused by **collision**.

C. **"Custom equipment"** means equipment, furnishings and parts permanently installed in or upon your covered auto, other than:

   1. Original manufacturer equipment, furnishings, or parts;

   2. Any replacement of original manufacturer equipment, furnishings or parts with other equipment, furnishings or parts of like kind and quality;

   3. Equipment, furnishings, or parts designed to assist disabled persons;

   4. Anti-theft devices and devices intended to monitor or record driving activity; and

   5. Tires of a substantially similar size as those installed by the manufacturer.

D. **"Loss"** means direct and accidental damage to the operational safety, function, or appearance of, or theft of, **your covered auto** or personal property contained in **your covered auto. Loss** includes a total loss, but does not include any damage other than the cost to **repair** or replace. **Loss** does not include any loss of use, or diminution in value that would remain after **repair** or replacement of the damaged or stolen property.

E. **"Nonowned vehicle."**

   1. **"Nonowned vehicle"** means any private passenger auto, pickup, **van**, **miscellaneous vehicle**, or **trailer** not owned by, or furnished or available for the regular use of, **you** or any **family member**. This applies only when the vehicle is in the custody of or being operated by **you** or any **family member**.

   2. A nonowned **vehicle** does not include any of the following vehicles used in any business or occupation other than farming or ranching:

      a. A pickup;

      b. A van; or

      c. A miscellaneous vehicle.

F. **"Repair."**

   1. **"Repair"** means restoring the damaged property to its pre-**loss** operational safety, function, and appearance. This may include the replacement of component parts.

   2. **Repair** does not require:

      a. A return to the pre-**loss** market value of the property;

**5100FL(02)** Rev. 10-12

Page 21 of 34

0901119c9367aaf3

USAA Confidential

**(PART D** Cont'd.)

   b.  Restoration, alteration, or replacement of undamaged property, unless such is needed for the operational safety of the vehicle; or

   c.  Rekeying of locks following theft or misplacement of keys.

G.  **"Your covered auto,"** as used in this Part, includes:

   1.  **Custom equipment,** up to a maximum of $5,000, in or on your covered **auto.**

   2.  A nonowned vehicle. If there is a **loss** to a nonowned vehicle, we will provide the broadest coverage shown on the Declarations.

**INSURING AGREEMENT**

A.  Comprehensive Coverage (excluding **collision).**

   1.  Physical damage. **We** will pay for **loss** caused by other than **collision** to **your covered auto,** including its equipment, and personal property contained in **your covered auto,** minus any applicable deductible shown on the Declarations. However, we will pay for the cost of repairing or replacing the damaged windshield on **your covered auto** without a deductible.

   2.  Transportation expenses. **We** will also pay:

     a.  Up to $30 a day, to a maximum of $900, for transportation expenses incurred by **you** or any **family member.** This applies only in the event of a total theft of **your covered auto.** We will pay only transportation expenses incurred during the period beginning 48 hours after the theft and ending when **your covered auto** is returned to use or, if not recovered or not repairable, up to seven days after we have made a settlement offer.

   b.  If Rental Reimbursement Coverage is afforded, limits for transportation expenses are the limits of liability shown on the Declarations for Rental Reimbursement for that vehicle.

B.  Collision Coverage. **We** will pay for **loss** caused by **collision** to **your covered auto,** including its equipment, and personal property contained in **your covered auto,** minus any applicable deductible shown on the Declarations.

C.  Rental Reimbursement Coverage (for **loss** other than total theft).

   1.  **We** will reimburse **you** for expenses **you** or any **family member** incurs to rent a substitute for **your covered auto.** This coverage applies only if:

     a.  **Your covered auto** is withdrawn from use for more than 24 hours due to a **loss,** other than a total theft, to that auto; and

     b.  The **loss** is covered under Comprehensive Coverage or caused by **collision,** and the cause of **loss** is not otherwise excluded under Part D of this policy.

   2.  **We** will reimburse **you** only for that period of time reasonably required to repair or replace **your covered auto.** If we determine **your covered auto** is a total loss, the rental period will end no later than seven days after **we** have made a settlement offer.

D.  USAA Roadside Assistance. **We** will pay the reasonable costs **you** or any **family member** incurs for one of the following each time **your covered auto** is disabled:

   1.  Mechanical labor up to one hour at the place of breakdown.

   2.  Locksmith services to gain entry to **your covered auto.** This does not include the rekeying of locks following theft or **misplacement** of keys.

**5100FL(02)** Rev. 10-12

Page 22 of 34

0901119c9367aa.f3

USAA Confidential

**(PART D Cont'd.)**

3. Towing, to the nearest place where necessary repairs can be made during regular business hours, if the vehicle will not run or is stranded on or immediately next to a public road.

4. Delivery of gas or oil to, or a change of tire on a disabled vehicle. However, **we** do not pay for the cost of these items.

## LIMIT OF LIABILITY

A. Total loss to **your covered auto. Our** limit of liability under Comprehensive Coverage and Collision Coverage is the **actual cash value** of the vehicle, inclusive of any **custom** equipment.

1. The maximum amount **we** will include for loss to custom equipment in or on your covered auto is $5,000.

2. **We** will declare **your covered auto** to be a total loss if, in our judgment, the cost to repair it would be greater than its actual cash value minus its salvage value after the loss.

B. Other than a total loss to **your covered auto:**

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the amount necessary to repair the loss based on our estimate or an estimate that **we** approve, if submitted by **you** or a third party. Upon request, we will identify at least one facility that is willing and able to complete the **repair** for the amount of the estimate.

2. **Our** estimate may specify used, rebuilt, remanufactured, or non-Original Equipment Manufacturer (non-OEM) parts which are at least equivalent in kind and quality to the damaged parts prior to the loss in terms of fit, appearance, and performance.

3. **You** may request that damaged parts be replaced with new Original Equipment Manufacturer (OEM) parts. **You** will be responsible, however, for any cost

difference between the parts included in **our** estimate and the new OEM parts used in the **repair.**

4. **We** will not take a deduction for depreciation. **We** will take a deduction if prior damage has not been **repaired.** Prior damage does not include wear and tear.

C. Personal property contained in **your covered auto.** The limits of liability described below are separate from the limits available for a **loss** to **your covered auto:**

1. **Our** limit of liability under Comprehensive Coverage and Collision Coverage is the lesser of:

   a. The amount necessary to replace the damaged or stolen property; or

   b. $250.

2. **We** will not take a deduction for depreciation.

D. Under Rental Reimbursement Coverage, **our** maximum limits of liability are the limits of liability shown on the Declarations for Rental Reimbursement Coverage for that vehicle.

E. Under USAA Roadside Assistance, **our** limit of liability is the reasonable price for the covered service.

## PAYMENT OF LOSS

**We** may pay for **loss** in money, or **repair** or replace the damaged or stolen property. **We** may, at our expense, return any stolen property to **you** or to the address shown on the Declarations. If **we** return stolen property **we** will pay for any damage resulting from the theft. **We** may keep all or part of the damaged or stolen property and pay **you** an agreed or appraised value for it. **We** cannot be required to assume the ownership of damaged property. **We** may settle a claim either with **you** or with the owner of the property.

**5100FL(02)** Rev. 10-12

Page 23 of 34

0901119c9367aaf3

USAA Confidential

**(PART D** Cont'd.)

**LOSS PAYABLE CLAUSE**

**Loss** or damage under this policy will be paid, as interest may appear, to the named insured and the loss payee shown on the Declarations. This insurance, with respect to the interest of the loss payee, will not become invalid because of **your** fraudulent acts or omissions unless the **loss** results from your conversion, secretion, or embezzlement of **your** covered auto. **We** may cancel the policy as permitted by policy terms and the cancellation will terminate this agreement as to the loss payee's interest. **We** will give the same advance notice of cancellation to the loss payee as **we** give to the named insured shown on the Declarations. **We** may send notices to the loss payee either by mail or by electronic means. However, if the loss payee requests in writing that **we** not send notices, including a notice of cancellation, **we** will abide by that request. When we pay the loss payee **we** will, to the extent of payment, be subrogated to the loss payee's rights of recovery.

**WAIVER OF COLLISION DEDUCTIBLE**

**We** will not apply the deductible to loss caused by collision with another vehicle if all of these conditions are met:

1. The loss to **your** covered auto is greater than the deductible amount; and

2. The owner and driver of the other vehicle are identified; and

3. The owner or driver of the other vehicle has a liability policy covering the loss; and

4. The driver of **your** covered auto is not legally responsible, in any way, for causing or contributing to the loss.

**EXCLUSIONS**

**We** will not pay for:

1. Loss to your covered auto which occurs while it is being used to carry persons for a fee. This exclusion (1.) does not apply to:

a. A share-the-expense car pool; or

b. **Your** **covered auto** used for volunteer work when reimbursement is limited to mileage expenses.

2. Damage due and confined to:

a. Road damage to tires;

b. Wear and tear;

c. Freezing; or

d. Mechanical or electrical breakdown or failure, including such damage resulting from negligent servicing or repair of **your covered auto** or its equipment. **We** will pay for ensuing damage only to the extent the damage occurs outside of the major component (such as transmission/transaxle, electrical system, engine including cooling and lubrication thereof, air conditioning, computer, suspension, braking, drive assembly, and steering) in which the initial mechanical or electrical breakdown or failure occurs.

This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto**, and it does not apply to USAA Roadside Assistance.

3. **Loss** due to or as a consequence of war, insurrection, revolution, nuclear reaction, or radioactive contamination.

4. **Loss** to a camper body or **trailer** owned by **you** or any **family member** which is not shown on the Declarations. This exclusion (4.) does not apply to one **you** or any **family member** acquires during the policy period and asks us to insure within 30 days after **you** or any **family** member becomes the owner.

5. **Loss** to any **nonowned vehicle** when used by **you** or any **family member** without a reasonable belief that **you** or that **family member** is entitled to do so.

**5100FL(02)** Rev. 10-12

Page 24 of 34

0901119c9367aa13

| USAA Confidential |

**(PART D Cont'd.)**

6. Loss to equipment designed or used to evade or avoid the enforcement of motor vehicle laws.

7. Loss to any nonowned vehicle arising out of its use by **you** or any **family member** while employed or otherwise engaged in **auto business** operations.

8. Loss to **your covered auto** while it is rented or leased to others, or shared as part of a personal vehicle sharing program.

9. Loss to any vehicle while it is being operated in, or in practice for, any driving contest or challenge.

10. Loss resulting from:

    a. The acquisition of a stolen vehicle;

    b. Any legal or governmental action to return a vehicle to its legal owner; or

    c. Any confiscation or seizure of a vehicle by governmental authorities.

    This exclusion (10.) does not apply to innocent purchasers of stolen vehicles for value under circumstances that would not cause a reasonable person to be suspicious of the sales transaction or the validity of the title.

11. Loss resulting from use in any illicit or prohibited trade or transportation.

12. Any loss arising out of any act committed:

    a. By or at the direction of **you** or any **family member**; and

    b. With the intent to cause a **loss**.

13. Loss caused by fungi, wet or dry rot, or bacteria. This means the presence, growth, proliferation, spread, or any activity of fungi, wet or dry rot, or bacteria. This exclusion (13.) does not apply to damage directly resulting from a **loss** covered under Comprehensive Coverage or Collision Coverage.

**5100FL**(02) Rev. 10-12

## MANDATORY PRE-INSURANCE INSPECTION

A. **We** have the right to inspect any private passenger motor vehicle which **you** insure or intend to insure for Physical Damage Coverage under this policy. This right applies only in accordance with Florida Statute 627.744.

B. When we require an inspection, **you** must cooperate and make the vehicle available for the inspection.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the **loss**, we will pay only **our** share of the **loss**. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **nonowned vehicle** will be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **nonowned vehicle**.

2. Any other applicable physical damage insurance.

3. Any other source of recovery applicable to the **loss**.

This provision does not apply to USAA Roadside Assistance.

## APPRAISAL

If **we** and **you** do not agree on the amount of **loss**, either may demand an appraisal. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of **loss**. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will pay its chosen appraiser and share the expenses of the umpire equally. Neither **we** nor **you** waive any rights under this policy by agreeing to an appraisal.

Page 25 of 34

0901119c9367aaf3

USAA Confidential

## PART E - GENERAL PROVISIONS

**BANKRUPTCY**

Bankruptcy or insolvency of the **covered person**, as defined in this policy, shall not relieve **us** of any obligations under this policy.

**CHANGES**

A. The premium is based on information **we** have received from **you** and other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete. You agree that if this information changes, or is incorrect or incomplete, we may adjust **your** premiums accordingly during the policy period.

B. If, during the policy period, the risk exposure changes for any of the following reasons, we will make the necessary premium adjustments effective the date of change in exposure. Change in exposure means the occurrence of an event listed in B.1. through B.7. or in E. below, or a similar event that may increase or decrease the policy premium. You agree to give **us** notice of any exposure change as soon as is reasonably possible. Changes that may result in a premium adjustment include, but are not limited to, the following:

1. Change in location where any vehicle is garaged.

2. Change in description, equipment, purchase date, registration, cost, usage, miles driven annually, or operators of any vehicle.

3. Replacement or addition of any vehicle. A replacement or additional vehicle is a **newly acquired vehicle**.

4. Deletion of a vehicle. The named insured may request that a vehicle shown on the Declarations be deleted from this policy. The effective date of this change cannot be earlier than the date of the named insured's request unless **we** agree to an earlier date.

5. Change in date of birth, marital status, driver's license information, or driving record of any operator.

6. Addition or deletion of an operator.

7. Change, addition, or deletion of any coverage or limits.

C. **We** will make any calculations or adjustments of **your** premium using the applicable rules, rates, and forms as of the effective date of the change.

D. If **we** make a change which broadens coverage under this edition of **our** policy without additional premium charge, that change will automatically apply to **your** insurance as of the date **we** implement that change in **your** location. This paragraph does not apply to changes implemented with a revision that includes both broadenings and restrictions in coverage. Otherwise, this policy includes all of the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.

E. Deployment.

1. If, because of **your** active-duty deployment in one of the military services of the United States, **you** have reduced the coverage on **your** covered auto and placed the vehicle in storage, then, upon **your** return from the deployment, **we** will reinstate the coverage that was on the vehicle prior to the deployment-caused reduction beginning on the date the vehicle is removed from storage.

**5100FL**(02) Rev. 10-12

Page 26 of 34

0901119c9367aaf3                    USAA Confidential

**(PART E Cont'd.)**

2. Any reinstatement of coverage under E.1. will apply for up to 60 days after the date **you** returned from deployment. If **you** wish to continue the reinstated coverage beyond the 60-day period, **you** must request it during the 60-day period. If **you** request reinstated coverage after this 60-day period, any coverage we agree to provide will be effective at the date and time of **your** request unless we agree to an earlier date.

3. **You** must pay an additional premium, as set out in Part E., Changes, B.7., for the reinstated coverage. However, if **you** return from deployment on furlough or emergency leave for a period of 30 days or less, **we** will waive any increase in the premium for the period of time **you** are on furlough or emergency leave, provided that no claim for coverage under this policy is made for a loss that occurs during that time period. If a loss occurs we will, as of the date of the loss, reinstate the coverage that was on the vehicle prior to the deployment-caused reduction, and **you** must pay an additional premium for that coverage.

**CONFORMITY TO LAW**

If any of the terms of this policy conflict with state or local law, state or local law will apply.

**DUTIES AFTER AN ACCIDENT OR LOSS**

**We** will not be required to provide coverage under this policy unless there has been full compliance with the following duties:

A. **We** must be notified promptly of how, when, and where an accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person or entity seeking any coverage or payment of any benefits except payment under Part A – Liability must:

1. Cooperate with us in the investigation, settlement, or defense of any claim or suit.

2. Promptly send **us** copies of any notices or legal papers received in connection with a suit, accident, or loss.

3. Submit, as often as **we** reasonably require:

   a. To physical exams by physicians **we** select. **We** will pay for these exams.

   b. To examination under oath. The examination must be signed.

4. Authorize **us** to obtain medical reports and other pertinent records.

5. Submit a proof of loss when required by us.

6. Promptly notify the police if a hit-and-run driver is involved.

C. A person or entity seeking coverage under Part B-1 – PIP Coverage or Part B-2 – Medical Payments Coverage.

1. As soon as practicable, give to **us** written proof of claim, under oath if required, which may include full particulars of the nature and extent of the injuries and treatment received and contemplated, and such other information as may assist **us** in determining the amount due and payable.

2. Submit as often as **we** reasonably require, to examination under oath. The examination must be signed.

3. Submit to mental examinations by physicians **we** select at **our** expense when and as often as **we** may reasonably require. Mental exams or physical exams as required by **us** in B.3.a. above will be scheduled in a location reasonably accessible to such person, and a copy of the medical report shall be forwarded to such person if requested. Reasonably accessible means any location:

   a. Within the municipality where such person is receiving treatment or in which that person resides; or

**5100FL(02)** Rev. 10-12

Page 27 of 34

**USAA Confidential**

**(PART E** Cont'd.}

    b.  Within 10 miles by road of such person's residence, provided such location is within the county in which that person resides.

    If there is no qualified physician to conduct the examination in a location reasonably accessible to such person, then the examination shall be conducted in an area of the closest proximity to that person's residence.

**D.**  A person seeking coverage under Part C – **UM** Coverage must also comply with the following:

    **1.**  If the **covered person** and the owner or operator of the **uninsured motor vehicle** reach a settlement agreement that would exhaust the owner's or operator's limits of liability, the **covered person** must submit the agreement to **us** in writing for our approval prior to final execution of the settlement agreement. This applies only if:

        **a.**  The settlement would not fully satisfy the **covered person's** claim for **BI**; and

        **b.**  A claim for UM Coverage has been or will be made against **us**.

    **2.**  The **covered person** may file suit against **us** and the owner or operator of the **uninsured motor vehicle** if, within 30 days after our receipt of the settlement agreement, **we** do not:

        **a.**  Approve the settlement;

        **b.**  Waive our rights of recovery against the owner or operator of the **uninsured motor vehicle**;

        **c.**  Authorize the signing of a full release; and

        **d.**  Agree to arbitrate the claim for UM Coverage.

The suit shall decide if the **covered person** is legally entitled to collect damages and, if so, the amount.

**E.**  A person seeking coverage under Part D – Physical Damage Coverage must also:

    **1.**  Take reasonable steps after loss to protect **your covered auto** and its equipment from further loss. **We** will pay reasonable expenses incurred to do this.

    **2.**  Promptly notify the police if **your covered auto** is stolen.

    **3.**  Permit **us** to inspect and appraise the damaged property before its repair or disposal.

## LEGAL ACTION AGAINST US

**A.**  No legal action may be brought against **us** until there has been full compliance with all the terms of this policy.

    **1.**  In addition, under Part A, no legal action may be brought against **us** until **we** agree in writing that the **covered person**, as defined in Part A, has an obligation to pay, or the amount of that obligation has been finally determined by judgment after trial.

    **2.**  In addition, under Part B–1 – PIP Coverage and Part B–2 – Medical Payments Coverage, if **we** fail to deny or pay a claim within 30 days of receiving adequate proof of that claim, the **covered person** shall not file suit for those benefits until providing **us** with a written demand for payment and giving **us** 30 days in which to respond to that demand. Any written demand for payment must include an itemized statement specifying each exact amount, the date of treatment, service, or accommodation, and the type of benefits claimed to be due.

**B.**  No person or organization has any right under this policy to bring **us** into any action to determine the liability of a **covered person**, as defined in this policy.

**5100FL(02)** Rev. 10-12

Page 28 of 34

**0901119c9367aa£3**

USAA Confidential

**(PART E Cont'd.)**

C. Unless, we agree otherwise, any legal action against us must be brought in a court of competent jurisdiction in the county and state where the **covered person** lived at the time of the accident.

## MEDIATION

**We** or the **covered person** may request mediation of any claim for BI in an amount of $10,000 or less or a claim for PD in any amount arising out of the ownership, operation, use, or maintenance of a motor vehicle prior to the institution of litigation.

Such request shall be filed with the Florida Department of Financial Services on a form approved by the department. The request must state why mediation is being requested and the issue in dispute.

The Florida Department of Financial Services will appoint a mediator. Each party may reject one mediator whether before or after the other party has made a rejection. The mediator will notify the parties of the date, time, and place of the mediation conference, which will be held within 45 days of the request for mediation. The mediation will be conducted informally and may be held by telephone if feasible. Participants must have authority to make a binding decision, and must mediate in good faith. Information and disclosures provided during mediation are not admissible in any subsequent action or proceeding relating to the claim or cause of action giving rise to the claim. Costs of the mediator shall be shared equally by each party unless the mediator determines a party has not mediated in good faith.

If a person files suit which relates to facts already mediated, such facts shall not be mediated again. Only one mediation may be requested for each claim, unless all parties agree to further mediation.

The filing of a request for mediation tolls the applicable time requirements for filing suit for a period of 60 days following the conclusion of the mediation process or the time prescribed in the Limitation of Actions, whichever is later.

## MISREPRESENTATION

**We** do not provide any coverage under this policy for any person who has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance:

1. At the time application was made; or

2. At any time during the policy period; or

3. In connection with the presentation or settlement of a claim.

## NON-DUPLICATION OF PAYMENT

When a claim, or part of a claim, is payable under more than one provision of this policy, **we** will pay for each element of loss only once under this policy.

## OUR RIGHT TO RECOVER PAYMENT

A. If **we** make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, **we** will be subrogated to that right. The person to or for whom payment was made shall do whatever is necessary to enable us to exercise **our** rights, and shall do nothing after loss to prejudice them. However, **our** rights in this paragraph do not apply:

1. Under Part C – UM Coverage, with respect to payments made because of the BI resulting from an accident with an **uninsured motor vehicle**, as defined in Definition 1.b. of that Part, if **we**:

   a. Have been given prompt written notice of a tentative settlement between a **covered person**, as defined in Part C, and the insurer of an **uninsured motor vehicle**; and

   b. Fail to advance payment to such person in an amount equal to the tentative settlement within 30 days after receipt of notification.

**5100FL(02)** Rev. 10-12

Page 29 of 34

0901119c9367aa£3

USAA Confidential

**(PART E Cont'd.)**

If we advance payment to the **covered person** in an amount equal to the tentative settlement within 30 days after receipt of notification, that payment will be separate from any amount the **covered person** is entitled to recover under the provisions of Part C – UM Coverage. However, we shall have a right to recover such advance payment.

2.  Under Part D, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

**B.** If **we** make a payment under this policy and the person to or for whom payment was made recovers damages from another, the person to or for whom payment was made shall hold in trust for us the proceeds of the recovery and reimburse **us** to the extent of **our** payment.

**C.** If the **covered person**, as defined in this policy, recovers from the party at fault and **we** share in the recovery, we will pay **our** share of the legal expenses. Our share is that percent of the legal expenses that the amount we recover bears to the total recovery. This does not apply to any amounts recovered or recoverable by **us** from any other insurer under any inter-insurer arbitration agreement.

**D.** If **we** make payment for a claim under Part A, and the **covered person**, as defined in Part A:

1.  Knowingly concealed or misrepresented any material fact or circumstance relating to this insurance; or

2.  Failed or refused to comply with the duties specified in this policy and prejudiced our defense of the liability claim by such failure or refusal;

then, the **covered person** shall reimburse **us** to the extent of **our** payment and cost of defense.

**E.** If **we** make payment for a claim under Part D and **you** or any **family member** has knowingly concealed or misrepresented any material fact or circumstance relating to this insurance, then **you** shall reimburse **us** to the extent of **our** payment.

**OWNERSHIP**

For purposes of this policy, a vehicle is deemed to be owned by a person if leased under a written agreement to that person for a continuous period of at least six months.

**POLICY PERIOD AND TERRITORY**

**A.** This policy applies only to accidents and losses which occur during the policy period as shown on the Declarations and within the policy territory. The policy territory is the United States of America (USA), its territories and possessions, Puerto Rico, and Canada, including transportation of **your covered auto** between any ports of these locations.

However, PIP benefits under Part B-1 – PIP Coverage apply only to accidents occurring within the State of Florida with respect to any covered person, as defined in Part B-1 – PIP Coverage, other than **you** or any **family member**.

**B.** The policy territory also includes Mexico, subject to the following conditions:

1.  All coverages afforded by the policy, except PIP Coverage, are extended to include coverage during trips into Mexico. This applies only to loss or accident that occurs within 75 miles of the USA border.

2.  Any liability coverage afforded by the policy is extended to include the remainder of Mexico, but only if **you** have valid and collectible liability coverages from a licensed Mexican insurance company at the time of loss. This paragraph (B.2.) applies only if the original liability suit for **BI or PD** is brought in the USA.

**5100FL(02)** Rev. 10-12

Page 30 of 34

USAA Confidential

**(PART E Cont'd.)**

3. Coverage under this policy does not extend:

   a. To any **covered person**, as defined in this policy, who does not live in the USA.

   b. To any **covered person**, as defined in this policy, **occupying** a vehicle which is not principally garaged and used in the USA.

   c. To any vehicle which is not principally garaged and used in the USA.

4. The words "state or province" as used in the Out of State Coverage provision in Part A of the policy do not include a "state or province" of Mexico.

5. Losses payable under Part D of the policy will be paid in the USA. If the vehicle must be repaired in Mexico, **our** limit of liability will be determined at the nearest point in the USA where repairs can be made.

6. Any insurance we provide will be excess over any other similar valid and collectible insurance.

**REDUCING THE RISK OF LOSS AND OTHER BENEFITS**

**We** may occasionally provide **you** with products or services that assist **you** in preventing or reducing the risk of loss, and may provide an incentive for **your** use of these items. **We** may also occasionally provide **you** with items, offers or services we think may benefit **you** or **your** family members. Such items, offers and services may be provided in any form we choose.

**SPOUSE ACCESS**

A. The named insured and we agree that the named insured and resident spouse are "customers" for purposes of state and federal privacy laws. The resident spouse will have access to the same information available to the named insured and may initiate the same transactions as the named insured.

**5100FL**(02) Rev. 10-12

B. The named insured may notify **us** that he/she no longer agrees that the resident spouse shall be treated as a "customer" for purposes of state and federal privacy laws, and we will not permit the resident spouse to access policy information.

**TERMINATION**

A. Cancellation. This policy may be cancelled during the policy period as follows:

   1. You may not cancel a new or renewal policy providing PIP Coverage or Property Damage Liability Coverage during the first 60 days this policy is in effect unless:

      a. **Your covered auto** has been totally destroyed so that it is no longer operable on the roads of Florida; or

      b. Ownership of **your covered auto** is transferred; or

      c. Another policy is purchased to replace the policy being cancelled; or

      d. You are a member of the United States Armed Forces and are called to or on active duty outside the United States in an emergency situation.

   2. You may cancel this policy for any reason after this policy is in effect for 60 days, but the effective date of cancellation cannot be earlier than the date of the request unless **we** agree to an earlier date.

   3. We may cancel this policy by mailing a notice to the named insured shown on the Declarations at the most recent address **you** provided to **us** by giving:

      a. At least ten days notice if cancellation is for nonpayment of premium; or

      b. At least 45 days notice in all other cases.

Page 31 of 34

0901119c9367a

**USAA Confidential**

**(PART** E Cont'd.)

4. If this is a new policy providing PIP Coverage and Property Damage Liability Coverage, we will not cancel for nonpayment of premium during the **first** 60 days following the date of issuance. However, we may cancel if a check used to pay us is dishonored for any reason.

5. After this policy is in effect for 60 days, or if this is a renewal policy, **we** will cancel only:

    a. For nonpayment of premium; or

    b. For material misrepresentation or fraud; or

    c. If your driver's license, or that of any driver who lives with you or customarily uses your **covered** auto, has been suspended or revoked. This must have occurred:

        (1) During the policy period or during the 180 days immediately preceding its effective date; or

        (2) If the policy is a renewal, during its policy period.

6. If this policy is issued to meet the requirements of Florida Statute 627.7275(2)(a) to reinstate a driver's license because of failure to maintain the required security, the following special provisions apply and supersede any contrary provisions in the policy:

    a. You may not cancel this policy for any reason.

    b. Effective when our underwriting is completed or 30 days from the effective date of the policy, whichever comes first:

        (1) We may not cancel this policy for any reason.

        (2) No refund of premium will be allowed.

(3) This policy may not be changed for any reason that materially increases the risk, including but not limited to, changing to a high risk vehicle, adding vehicles, adding new drivers or moving to a different rating territory.

(4) If there is a material change in the policy, **you** must obtain a new six-month non-cancellable policy. If **you** obtain the policy from us, we will give **you** a credit on the new policy for any unearned premium paid on the previously issued **policy.**

7. **We** may cancel for any other reason not prohibited by law.

B. Nonrenewal. If **we** decide not to renew this policy, we will mail notice by registered or certified mail or United States Post Office certificate of mailing to the named insured shown on the Declarations at the most recent address **you** provided to **us.** Notice will be mailed at least 45 days before the end of the policy period.

C. Automatic Termination.

1. If **we** offer to renew and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal premium when due will mean that **you** have not accepted our offer.

2. If you obtain other insurance on **your** covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance. This does not apply to liability coverage purchased for travel in Mexico.

D. Other Termination Provisions.

1. Mailing of any notice by registered or certified mail or United States Post Office proof of mailing of any notice will be sufficient proof of notice.

**5100FL(02)** Rev. 10-12

Page 32 of 34

0901119c9367aaf3

USAA Confidential

**(PART E Cont'd.)**

2. If this policy is cancelled, the named insured shown on the Declarations may be entitled to a premium refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice will become the end of the policy period.

### TRANSFER OF YOUR INTEREST IN THIS POLICY

**Your** rights and duties under this policy may not be assigned without our written consent. However, if the named insured shown on the Declarations dies, we will provide coverage until the end of the policy period for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if the named insured shown on the Declarations; and

2. The legal representative of the deceased person as if the named insured shown on the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

### TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy we issued to **you** apply to the same accident, the maximum limit of **our** liability under all the policies will not exceed the highest applicable limit of liability under any one policy.

This provision does not apply to UM **Coverage.**

Copyright, USAA, 2011. All rights reserved.
Includes copyrighted material of **Insurance Services Office,** used with permission.

**5100FL(02)** Rev. 10-12

Page 33 of 34

0901119c9367aaf3

USAA Confidential

THIS PAGE INTENTIONALLY LEFT BLANK

**5100FL(02)** Rev. 10-12

Page 34 of 34

0901119c9367aaf3

USAA Confidential

Filing # 53313580 E-Filed 03/06/2017 11:47:35 AM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.: 17-004213 CA 01

BONNIE LUCAS and RICHARD LUCAS,
Individually and as Wife and Husband,

     Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY, an
Insurance Company authorized to do Business in
Florida,

     Defendant.

_____/

## DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE AND MEMORANDUM OF LAW

**COMES NOW,** the Defendant, USAA CASUALTY INSURANCE COMPANY, by and through its undersigned counsel, hereby files this, its Motion to Dismiss with Prejudice and Memorandum of Law, as follows:

The current claim now pending before this Court has been litigated and dismissed without leave to amend in the United States District Court for the Southern District of Florida. The Cause of Action has been adjudicated on its merits and the State Court, before whom this case in now pending, has no jurisdiction to disturb the Federal Court Order dismissing the Cause of Action without leave to amend.

## FACTS

1.    On July 7, 2016, the Plaintiffs filed their first Complaint for damages alleging personal injuries as a result of a motor vehicle accident which occurred on

WADSWORTH LAW, LLLP
14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

CASE NO.: 17-004213 CA 01
Page 2

November 9, 2014. The claim was filed against USAA CASUALTY INSURANCE COMPANY, as the uninsured/underinsured motorist carrier for Plaintiffs. (Plaintiff's Initial Complaint, attached and incorporated by reference hereby as Defendants No. 1). This initial Complaint was dismissed.

2.      The initial Complaint was filed in the State Circuit Court of Florida in Dade County, under case number 2016-017389-CA-01

3.      In all respects, the Plaintiffs, the Defendant, the accident at issue and the Cause of Action previously filed, are one and the same with the suit which is now pending before this court.

4.      The current case is also filed in Dade County Circuit Court, under a different case number, 17-004213-CA-01

5.      On August 5, 2016 Plaintiffs filed their First Amended Complaint for damages.

6.      The Plaintiff's Cause of Action as stated in its First Amended Complaint was then removed to Federal Court for diversity of jurisdiction reasons.

7.      On December 28, 2016 Plaintiffs filed their Second Amended Complaint in the U.S. District Court for the Southern District of Florida alleging diversity of jurisdiction. This Complaint was Dismissed on numerous grounds( Order of Dismissal Without Prejudice to refile, attached and incorporated by reference hereto as Defendants No. 2)

8.      Each of the Plaintiff's Complaints which were filed in U.S. District Court, were summarily dismissed.

7.      Plaintiff's filed their Third Amended Complaint on January 25, 2017.

WADSWORTH LAW, LLLP
14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

CASE NO.: 17-004213 CA 01
Page 4

15.    The Plaintiff has filed no Motion for Rehearing relating to the Order of

Dismissal without leave to amend from the U.S. District Court, and the time period for

such filing has passed.

**ISSUES:**

1. **When a U.S. District Court dismisses a cause of action without leave
to amend, it is deemed an adjudication on the merits. Thereafter, the
claim may not be refiled in either Federal or State court.**

2. **Once Plaintiffs submits to Federal Court jurisdiction they can not file
a claim for the same relief in State Court without the claim first being
remanded back to State Court.**

**1)    Adjudication on the merits**

The dismissal of the cause of this action in Federal Court is plainly stated to be,

"without leave to amend." (See Defendants No.3)  The U.S. District Court expressly

dismissed the Plaintiff's Third Amended Complaint pursuant to Fed.R.Civ.P. Rule 41(b).

Such Rule states:

(b) Involuntary Dismissal; If the Plaintiff fails to prosecute or comply with
these rules or a court order, a Defendant may move to dismiss the action or
any claim against it. Unless the dismissal order states otherwise, a dismissal
under this subsection (b) and any dismissal not under this rule, except one
for lack of jurisdiction, improper venue, or failure to join a party under Rule
19.... **operates as an adjudication on the merits** ( emphasis added).

The cause of action at issue was dismissed by the U.S. District, Federal Court Judge

due to repeated failure to state a cause of action.  The claim was not dismissed for

WADSWORTH LAW, LLLP
14 NE First Avenue, 10ᵗʰ Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

CASE NO.: 17-004213 CA 01
Page 5

jurisdiction, venue or failure to join an indispensable party where refiling may have been permissible.

The Florida Supreme Court long ago set forth the rule of law upholding the Constitutional mandate of full faith and credit of Florida State Courts to a Federal Court with concurrent jurisdiction. In *Wake v. Clower*, 94 Fla. 817 (Fla. 1927), regarding a claim that was resolved on its merits in Federal Court and later filed in State Court, the Florida Supreme Court wrote:

> "Final judgement in either State or Federal Court in a suit on the same cause of action, between same parties is conclusive in the other, regardless of which suit was first commenced." (*Id.* at 823).

> A judgement on the merits rendered in a former suit between the same parties, or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or to defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action." (*Id.* at 824).

In *Pettijohn v. Dade County*, 446 So.2d 1143 (3rd DCA, 1984), under facts similar to those at issue, the Court noted:

> Federal Court judgment dismissing action for lack of prosecution, determined by that court to an adjudication on the merits, was, under full faith and credit clause of the United States Constitution, entitled to be given *Res Judicata* prohibiting claim in State Court action substantially identical to Federal action.

Further, the *Pettijohn* Court noted as follows:

> The State, which is called upon to enforce a judgement under the Full Faith and Credit clause, is precluded from making any inquiry into the merits of

WADSWORTH LAW, LLLP
14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

a cause of action, the logical consistency of decision, or validity of legal principals by which the judgment is based (United States Constitution – Art. 4, Section 1).

In virtually every claim which had been filed in Federal court, which is later dismissed pursuant to Fed.R.Civ.P. Rule 41(b), Florida State courts have refused to accept jurisdiction. *See Massachusetts Mutual v. Ambassador Concessions*, 293 So.2d 75 (3rd DCA, 1974); *AGB Oil Co. v. Chrystal Exploration*, 406 So.2d 1165 (3rd DCA, 1981); *Butler v. Richard Bertram Co.*, 281 So.2d 227 (3rd DCA, 1973); *AMEC Civil LLC v. PTG Construction*, 106 So.3d 455 (1st DCA, 2012); *Leach v. Fienberg*, 101 So.2d 52 (3rd DCA, 1958); *Southers Coatings, Inc. v. City of Tamarac*, 916 So.2d 19 (4th DCA, 2005); *Wake v. Clower*, 94 Fla. 817 (Fla. 1927); and *Pettijohn v. Dade County*, 446 So.2d 1143 (3rd DCA, 1984).

Likewise, in every claim filed in Federal Court which is later dismissed pursuant to Fed.R.Civ.P. Rule 41(b), the Federal Courts have insisted that *Res Judicata* prohibits the Florida State Courts ability to exercise jurisdiction over the claim. *See: B. Tartt v. Northwest Community Hospital*, 453 F.3d 817 (USDA, 7th Cir, 2006); *Rhodes v. Van Steenberg*, 225 F.Supp. 113 (USDA, Nebraska, 1963); *Proctor v. Millar Elevator Service, Co.*, 8 F.3d 824 (USDA, District of Columbia, 1993).

Thus, whether the issue was addressed in State Court, or in Federal Court, the result is the same. No refiling of a Complaint is permissible after the cause of action is dismissed on its merits.

**2.  No remand by Federal Court to State Court.**

The Plaintiffs First Amended Complaint was removed to Federal court.  By accepting U.S. District Court jurisdiction and litigating of the claim in Federal court, Plaintiff selected the forum in which they wished to proceed.  Likewise, the U.S. District Court for the Southern District of Florida accepted jurisdiction to adjudicate Plaintiff's claim.

Federal Statute 28 USCA, §1146(d) states:

> After filing of such notice of removal in a civil action, the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such state court, which shall effect the removal and the **State Court shall proceed no further unless and until the case is remanded.** *(Emphasis added).*

Numerous Federal Courts have relied on 28USCA, §1446(d), which precludes a State Court from exercising jurisdiction over a case adjudicated in Federal Court. Once a case is pending in Federal Court, no state is permitted to address the claim in any manner unless the claim is procedurally remanded from the Federal Court back to the State Court.

In *Preston v. All State Insurance Company,* 267 So.2d 1322 (3rd DCA, 1993) the court explained the importance of remand from Federal Court when stating:

> Insofar as pertinent here, the Federal removal statute provides that once a copy of the notice of removal is filed in State Court, "the State Court shall proceed no further unless and until the case is remanded." 28 U.S.C. §1446(d); *General Electric Credit Corp. v. Smith,* 4 So.2d 75, 76 (Fla. 2nd DCA, 1986); *Weiser v. Bierbrouwerij,* 430 So.2d 986, 987 (Fla. 3rd DCA, 1983); *Rutas Aereas SA v. Cauley and Martin, Inc.,* 160 So.2d 168, 169 (Fla. 3rd DCA).

CASE NO.: 17-004213 CA 01
Page 8

**CONCLUSION:**

A dismissal in Federal court "without leave to amend" is an adjudication on the merits which precludes any State Court from addressing the same claim. The adjudication in the Federal Court further operates as *Res Judicata* preventing a claim from subsequently being adjudicated in State Court.

The cause of action at issue was removed to Federal Court and has never been remanded back to State Court. As such, 28 U.S.C.A. §1446(d) and numerous Federal cases prevent a State Court from adjudicating, or exercising jurisdiction over such a claim.

WHEREFORE, the Defendant prays this Honorable Court grants its Motion to Dismiss with Prejudice and retain jurisdiction only so far as is necessary to address any 57.105 sanctions.

WADSWORTH LAW, LLLP
14 NE First Avenue, 10ʰ Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2b...   7/27/2017

CASE NO.: 17-004213 CA 01
Page 9

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY a true copy of the foregoing was provided, via E-Mail to: rgilb4193@hotmail.com at: Ronald B. Gilbert, Esq., P.O. Box 560396, Miami, Florida 33256 on this 6th day of March, 2017.

WADSWORTH LAW, LLLP
Attorneys for Defendant
14 N.E. 1st Avenue, 10th Floor
Miami, FL 33132
(305) 777-1000 Telephone
(305) 777-1001 Facsimile

By:      /s/ Michael J. Snowden
Michael J. Snowden
Florida Bar No. 622656
E-Mail: ms@wadsworth-law.com
Christopher W. Wadsworth
Florida Bar No. 78026
E-Mail: cw@wadsworth-law.com

WADSWORTH LAW, LLLP
14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2b...   7/27/2017

Filing # 43675317 E-Filed 07/07/2016 04:07:28 PM

|  | ) | IN THE COUNTY COURT OF THE 11TH JUDICIAL CIRCUIT IN AND FOR MIAMI-DADE COUNTY, FLORIDA |

**BONNIE LUCAS and
RICHARD LUCAS**  )
**Individually and as Wife and Husband**

**Plaintiffs**                                    **CIVIL DIVISION**
                                                  **CASE NO.:**
**Vs.**                          )

**USAA Insurance Company, an
Insurance Company authorized to
do Business in Florida**          )

**Defendant**

_____

## COMPLAINT FOR BAD FAITH AND DAMAGES

Plaintiffs, BONNIE LUCAS and RICHARD LUCAS Individually and as Wife and Husband file this their

Complaint and sues Defendant USAA Insurance Company; an Insurance Company authorized to do

Business in Florida and alleges:

1. This is an action for monetary damages that does exceed $15,000.00 exclusive of interest involving an

Underinsured Motorist Insurance contract claim in Miami-Dade County, Fl.

2. Plaintiffs, BONNIE LUCAS sustained personal injuries and damage greater than $15,000 not including

Interest in an automobile accident on 11/9/2014.

3. Defendant, Defendant USAA Insurance Company, an Insurance Company authorized to

do Business in Florida contracted with the Plaintiff's for an Underinsured Motorist Protection Insurance

Policy providing $400,000.00 coverage stackable for 4 vehicles each insured for $100,000.00 (hereinafter

referred to as Defendant) (Exhibit A Declaration Sheet and policy) providing medical and other coverage for

injuries sustained in auto accident covering the date 11/9/2014.

4. That on the date of the accident an Underinsured Motorist owned a motor vehicle that was

negligently operated or maintained the motor vehicle so that it collided with plaintiff's motor vehicle in

1

0901119c96f49b70                    USAA Confidential

which the Plaintiff BONNIE LUCAS was driving causing a total loss to vehicle, triggering of airbags. As a result plaintiff BONNIE LUCAS suffered bodily injury including but not limited to a fractured ankle, dislocated knee, herniated disc and facial damage which included damage to her porcelain restorations in her mouth and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

6. The Plaintiff put on notice of the Excess Motorists claim to Defendant because the at fault motorist only had $10,000 of liability coverage and the Plaintiffs maintained $400,000.00 excess UM Coverage under their auto policy. (See Declaration sheet and Policy attached. (See Exhibit A & B)

7. That the at fault party was insured by an insurance company who has tendered their policy limits of $10,000.00.

8. That the Defendant have given permission to accept the policy limits and has waived any subrogation rights).

9. That the Plaintiff has made demand for the policy limits of $400,000.00 under the USAA UM stackable coverage see Demand Letter (attached as Exhibit C) which included all medical reports indicating that the injuries sustained by Plaintiff BONNIE LUCAS have resulted in past, present and future substantial medical bills exceeding the No Fault and liability coverage as well as permanent injuries requiring substantial future medical care and disability to live a normal life with evidence of the active life the plaintiff BONNIE LUCAS was engaged in prior to accident.

10. The Defendant USAA despite having ample evidence of the substantial injuries and permanent damage to the Plaintiff BONNIE LUCAS and the derivative claim of her husband RICHARD LUCAS has responded to the to the Demand letter by offering $35,000.00

2

0901119c96f49b70

USAA Confidential

substantially below the value of the claims and injuries which exceed $400,000.00 in violation of Florida Statute §624.155 (1) & (3) in not acting in good faith and promptly setting the claims of the Plaintiff's by tendering the $400,000.00 limits in a timely manner as demanded by Plaintiff's counsel.

11. The Plaintiffs have been caused to retain an attorney to bring this action and have agreed to pay him a reasonable fee for his services and under Florida Statute §624.155 any action taken under this statute the Defendant USAA is liable to pay the Plaintiff's Attorney fees.

WHEREFORE Plaintiff demands judgment for damages in excess of $400,000.00, pre-judgment interest against Defendant, attorney's fees and demands trial by jury.

> RONALD B. GILBERT
> Attorney for Plaintiff
> Rgilb4193@hotmail.com
> Mailing address:  P.O. Box 560396
> Miami, Fl 33256-0396
> (305) 546-6297
> FAX: 305-235-0586
> By: s/Ronald B. Gilbert
>    RONALD B. GILBERT
>    Florida Bar No. 111332

3

0901119c96f49b70

USAA Confidential

)                    IN THE COUNTY COURT OF THE 11TH JUDICIAL
                                     CIRCUIT IN AND   FOR MIAMI -DADE COUNTY,
)            -             FLORIDA

**BONNIE LUCAS and**           )
**RICHARD LUCAS**
**Individually and as Wife and Husband**

**Plaintiffs**                              **CIVIL DIVISION**
                                            **CASE NO.: 2016-017389-CA-01**
**Vs.**                        )

**USAA CASUALTY Insurance Company, an**
**Insurance Company authorized to**
**do Business in Florida**              )

**Defendant**

---

## AMENDED COMPLAINT FOR BAD FAITH AND DAMAGES

Plaintiffs, BONNIE LUCAS and RICHARD LUCAS Individually and as Wife and Husband file this their

Complaint and sues Defendant USAA CASUALTY Insurance Company; an Insurance Company

authorized to do Business in Florida and alleges:

1. This is an action for monetary damages that does exceed $15,000.00 exclusive of interest involving an

Underinsured Motorist Insurance contract claim in Miami-Dade County, Fl.

2. Plaintiffs, BONNIE LUCAS sustained personal injuries and damage greater than $15,000 not including

Interest in an automobile accident on 11/9/2014.

3. Defendant, Defendant USAA CASUALITY Insurance Company, an Insurance Company authorized to

do Business in Florida contracted with the Plaintiff's for an Underinsured Motorist Protection Insurance

Policy providing $400,000.00 coverage stackable for 4 vehicles each insured for $100,000.00 (hereinafter

referred to as Defendant) (Exhibit A Declaration Sheet and policy) providing medical and other coverage for

injuries sustained in auto accident covering the date 11/9/2014.

4. That on the date of the accident an Underinsured Motorist owned a motor vehicle that was

negligently operated or maintained the motor vehicle so that it collided with plaintiff's motor vehicle in

1

0901119c9750f461              USAA Confidential

which the Plaintiff BONNIE LUCAS was driving causing a total loss to vehicle, triggering of airbags.
As a result plaintiff BONNIE LUCAS suffered bodily injury including but not limited to a fractured
ankle, dislocated knee, herniated disc and facial damage which included damage to her porcelain
restorations in her mouth and resulting pain and suffering, disability, disfigurement, mental anguish,
loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and
treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing
condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future.

6. The Plaintiff put on notice of the Excess Motorists claim to Defendant because the at fault
motorist only had $10,000 of liability coverage and the Plaintiffs maintained $400,000.00 excess UM
Coverage under their auto policy. (See Declaration sheet and Policy attached. (See Exhibit A & B)

7. That the at fault party was insured by an insurance company who has tendered their policy limits of
$10,000.00.

8. That the Defendant have given permission to accept the policy limits and has waived any
subrogation rights).

9. That the Plaintiff has made demand for the policy limits of $400,000.00 under the USAA
Causality Insurance Company UM stackable coverage see Demand Letter (attached as
Exhibit C) which included all medical reports indicating that the injuries sustained by
Plaintiff BONNIE LUCAS have resulted in past, present and future substantial medical bills
exceeding the No Fault and liability coverage as well as permanent injuries requiring
substantial future medical care and disability to live a normal life with evidence of the active
life the plaintiff BONNIE LUCAS was engaged in prior to accident.

10. The Defendant USAA CASUALITY Insurance company despite having ample evidence of
the substantial injuries and permanent damage to the Plaintiff BONNIE LUCAS and the
derivative claim of her husband RICHARD LUCAS has responded to the to the Demand

2

0901119c9750£461                        USAA Confidential

letter by offering $35.000.00 substantially below the value of the claims and injuries which exceed $400,000.00 in violation of Florida Statute §624.155 (1) & (3) in not acting in good faith and promptly setting the claims of the Plaintiff's by tendering the $400,000.00 limits in a timely manner as demanded by Plaintiff's counsel.

11. The Plaintiffs have been caused to retain an attorney to bring this action and have agreed to pay him a reasonable fee for his services and under Florida Statute §624.155 any action taken under this statute the Defendant USAA CASUALITY Insurance company is liable to pay the Plaintiff's Attorney fees.

WHEREFORE Plaintiff demands judgment for damages in excess of $400,000.00, pre-judgment interest against Defendant, attorney's fees and demands trial by jury.

RONALD B. GILBERT
Attorney for Plaintiff
Rgilb4193@hotmail.com
Mailing address: P.O. Box 560396
Miami, FL 33256-0396
(305) 546-6297
FAX: 305-235-0586
By: s/Ronald B. Gilbert
RONALD B. GILBERT
Florida Bar No. 111332

3

0901119c9750f461

USAA Confidential

Case 1:16-cv-23946-RNS   Document 13   Entered on FLSD Docket 12/16/2016   Page 1 of 4

United States District Court
for the
Southern District of Florida

Bonnie Lucas and Richard Lucas,        )
Plaintiffs,                            )
                                       )
v.                                     )
                                       )   Civil Action No. 16-23946-Civ-Scola
USAA Casualty Insurance                )
Company, Defendant.                    )
                                       )

## Order on Motion to Dismiss

This matter is before the Court on the Defendant USAA Casualty Insurance Company's motion to dismiss. (Mot., ECF No. 5.) The Plaintiffs, Bonnie Lucas and Richard Lucas, filed a response. (Resp., ECF No. 7.) USAA failed to file a reply, and the time to do so has passed. This matter is ripe for the Court's decision. For the reasons set forth in this Order, the Court **grants** the Motion (**ECF No. 5**).

### 1. Factual Allegations

The Plaintiffs filed their original complaint in state court on July 7, 2016. (Notice of Removal Ex. C at 19–21, ECF No. 1.) The Plaintiffs then filed the Amended Complaint for Bad Faith and Damages ("the Complaint") on August 5, 2016. (*Id.* at 16–18.) Their Complaint alleges in ten unorganized paragraphs the following:[1] (1) Bonnie Lucas sustained personal injuries in a car collision on November 9, 2014 (*Id.* ¶ 2.); (2) USAA provided Underinsured Motorist Protection Insurance coverage to the Plaintiffs, and a negligent underinsured motorist operated a vehicle that collided with Bonnie Lucas's vehicle (*Id.* ¶ 3–4); (3) the underinsured motorist had $10,000 of liability coverage (*Id.* ¶ 6–7); (4) the Plaintiffs made a demand to USAA for underinsured coverage, but USAA offered to pay substantially less than the Plaintiffs demanded (*Id.* ¶ 9–10); (5) Richard Lucas has a "derivative claim" that USAA has not compensated (*Id.* ¶ 10); and (6) USAA acted in bad faith in violation of sections 624.155(1) and (3), Florida Statues (*Id.* ¶ 10). The Complaint also requests attorney's fees and prejudgment interest. (*Id.* at 3.) USAA properly removed the case to federal court based on this Court's diversity jurisdiction.

### 2. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is

---

[1] At first glance the Complaint consists of eleven numbered paragraphs, but contains no paragraph number five.

Case 1:16-cv-23946-RNS   Document 13   Entered on FLSD Docket 12/16/2016   Page 2 of 4

and the ground upon which it rests." Fed. R. Civ. P. 8(a).  The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  When considering a motion to dismiss, the Court must accept all of a complaint's well-pled factual allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

### 3. Analysis

USAA moves to dismiss the Complaint, arguing that the Complaint failed to state a cause of action, violated Rule 10(b) of the Federal Rules of Civil Procedure, and violated the statutory notice requirements of section 624.155, Florida Statutes. (Resp. at 3–7, ECF No. 5.) USAA further requests that the Court strike as improper the Plaintiffs' pleas for attorney's fees and prejudgment interest. (*Id.* at 7–8.)

If the Plaintiffs intended to assert a cause of action for breach of contract— an intention impossible to discern due to the lack of organizational clarity in the Complaint—their claim fails as a matter of law. The Complaint mentions "Underinsured Motorist Protection Insurance," "UM coverage," and an accident involving an "Underinsured Motorist." (Notice of Removal Ex. C ¶¶ 1, 3–4, 6, 9, ECF No. 1.) But Florida law does not recognize "an uninsured/underinsured motorist claim [as] a breach of contract action because a claim for uninsured/underinsured motorist coverage is predicated upon the cause of action against the tortfeasor." *Weisler v. Safeco Ins. Co. of Illinois*, No. 14-CV-81107, 2015 WL 11281290, at *3 (S.D. Fla. Apr. 9, 2015) (Ryskamp, J.) (citing *Woodall v. Travelers Indem. Co.*, 699 So. 2d 1361, 1363 n.5 (Fla. 1997)) (collecting cases). In order for the Plaintiffs to state any cause of action grounded in underinsured motorist coverage, the underlying liability and damages against the tortfeasor must be established first. *Id.*

Here, USAA notes in its motion that "the damages . . . from the alleged underinsured motorist have not yet been determined." (Mot. at 5, ECF No. 5.) The Plaintiffs, on the other hand, have included no allegations in the Complaint regarding any finding of liability and damages against the underinsured motorist. The Plaintiffs cannot state a breach of contract cause of action.

To the extent that the Plaintiffs may have intended to assert a different cause of action, that ostensible claim also fails, as does Richard Lucas's unnamed "derivative claim." The Complaint consists of ten continuous, misnumbered paragraphs, unseparated by logical divisions into counts. Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Further, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." *Id.* Pleadings that violate this Rule, often considered "shotgun pleadings," remain disfavored in the Eleventh Circuit. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320–23 (11th Cir. 2015) (collecting cases); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 (11th Cir. 2008) (describing a complaint with "untold causes of action, all bunched together in one count [as] contrary to the requirements of [Rule] 10(b)."). A court has the discretion to dismiss a complaint for failure to comply with the pleading rules. *Heard v. Nix*, 170 F. App'x 618, 619–20 (11th Cir. 2006).

Finally, the Plaintiffs off-handedly assert a violation of section 624.155, Florida Statutes, grounded in USAA's purportedly low settlement offer. (Notice of Removal Ex. C ¶ 10–11, ECF No. 1.) Section 624.155(1)(b)1. provides a statutorily created civil remedy where an insurer does not attempt in good faith to settle a claim. The statute further provides that "[a]s a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation." Fla. Stat. Ann. § 624.155(3)(a) (2016). Because this civil remedy "'is in derogation of the common law, it must be strictly construed.'" *Bollinger v. State Farm Mut. Auto. Ins. Co.*, 538 F. App'x 857, 864–65 (11th Cir. 2013) (quoting *Talat Enter., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000)).

The Plaintiffs attached to the Response a copy of their Civil Remedy Notice ("the Notice"), clearly showing that they filed the Notice on August 8, 2016. (Resp. Ex E, ECF No. 7-1.)[2] The Court may consider the Notice on a motion to dismiss because the Plaintiffs incorporated it by reference in the Complaint, no party has disputed its authenticity, and the document is central to the Plaintiffs' claim. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999).

---

[2] The Plaintiffs label the Civil Remedy Notice as "Exhibit E," but it is the first and only exhibit attached to the Response.

As USAA argues, this cause of action must be dismissed for failure to comply with the statute's notice requirements. The Plaintiffs originally filed this suit on July 7, 2016, and amended it on August 5, 2016, but did not submit the notice as required by statute until August 8, 2016. The Civil Remedy Notice is, and must be strictly construed as, "a *condition precedent* to bringing an action under this section." Fla. Stat. Ann. § 624.155(3)(a) (emphasis added). The Plaintiffs cavalierly claim, "The Plaintiffs have given notice[,] and USAA has not responded therefore any time compliance is moot." (Resp. at 4, ECF No. 7.) This assertion entirely misunderstands the statutory *pre-suit* notice requirement.

Having already filed suit without first complying with the strictly construed pre-suit notice requirement of section 624.155(3)(a), the Plaintiffs have lost their bad faith claim. Regardless of how artfully or unartfully they might re-plead a bad faith claim, the Plaintiffs cannot go back in time and cure this deficiency. *Bollinger*, 538 F. App'x at 865 ("In light of this statutory scheme, [the plaintiff's] admitted failure to comply with the statutory pre-suit notice requirement is fatal to her pursuit of a statutory bad faith action against [the insurer].").

**4. Conclusion**

The Plaintiffs fail to sufficiently plead a cognizable claim upon which relief could be granted. In addition, the Plaintiffs fail to comply with Rules 8(a) and 10(b). Accordingly, for the reasons explained above, the Court **grants** USAA's motion to dismiss (**ECF No. 5**). The Court **dismisses** this action **without prejudice**. Because the Court dismisses the Complaint in its entirety, the Court will not address USAA's request to strike the Plaintiffs' pleas for attorney's fees and prejudgment interest. The Plaintiffs are given leave to file a Second Amended Complaint addressing the deficiencies noted in this Order, to the extent the deficiencies may be cured. The Plaintiffs must file the Second Amended Complaint by **January 5, 2017**.

**Done and ordered**, at Miami, Florida, on December 15, 2016.

Robert N. Scola, Jr.
United States District Judge

Case 1:16-cv-23946-RNS   Document 28   Entered on FLSD Docket 02/13/2017   Page 1 of 5

United States District Court
for the
Southern District of Florida

Bonnie Lucas and Richard Lucas,   )
Plaintiffs,                        )
                                   )
v.                                 )
                                   )   Civil Action No. 16-23946-Civ-Scola
USAA Casualty Insurance            )
Company, Defendant.                )
                                   )

## Order Dismissing Complaint

This matter is before the Court on the Defendant USAA Casualty Insurance Company's motion to dismiss. (Mot., ECF No. 22.) Having reviewed the Motion, the record, and the relevant law, the Court **strikes** the Plaintiffs' Fourth Amended Complaint (**ECF No. 27**) as improperly filed, **grants** the Defendant's Motion to Dismiss (**ECF No. 26**) for the reasons stated below, and **dismisses without leave to amend** the Plaintiffs' Third Amended Complaint (**ECF No. 24**).

### 1. Procedural Background

Pursuant to the Court's Scheduling Order, the deadline to amend pleadings was November 18, 2016. (Order, ECF No. 12.) Nonetheless, when the Court dismissed the Plaintiffs' Amended Complaint on December 16, 2016, it allowed the Plaintiffs until January 5, 2017, to file their Second Amended Complaint. (Order, ECF No. 13.) The Plaintiffs complied (ECF No. 14), and the Defendant immediately moved to dismiss (ECF No. 16). The Plaintiffs filed a Response to Defendant's Motion to Dismiss, which in reality sought leave of the Court to amend their Third Amended Complaint (ECF No. 20.)

Although the Plaintiffs made no mention of the long-passed deadline to amend their pleadings, the Court allowed them to file a Third Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). (ECF No. 23.) Then, more than two months after the Court's established deadline for amending the pleadings, the Plaintiffs filed their Third Amended Complaint on January 25, 2017. (ECF No. 24.)

Not surprisingly, after noting several deficiencies with the Third Amended Complaint, the Defendant again moved to dismiss. (ECF No. 26.) Apparently believing both that the Court's Scheduling Order did not apply to them and that Rule 15(a)(1)(B) allowed them infinite opportunities to amend their



complaint as a matter of course, the Plaintiffs merely filed a Fourth Amended Complaint. (ECF No. 27.)

### 2. Factual Allegations

The Court takes the factual allegations from the Plaintiffs' Third Amended Complaint ("Complaint"). (ECF No. 24.) The Complaint alleges the following in support of one count of negligence: (1) Bonnie Lucas sustained personal injuries in a car collision on November 9, 2014 (*Id.* ¶ 5.); (2) USAA provided Underinsured Motorist Protection Insurance coverage to the Plaintiffs, and a negligent underinsured motorist operated a vehicle that collided with Bonnie Lucas's vehicle (*Id.* ¶¶ 4, 10); (3) "[T]he tortfeasor, Fabiola Mafiol had minimal liability coverage of $10,000 available for this accident which has been tendered and the Defendant USAA Casualty has waived subrogation and agreed to the Plaintiffs accepting same not waiving their excess under insured motorists claim, as such, the Plaintiff, BONNIE LUCAS AND RICHARD LUCAS INDIVIDUALLY AND AS HUSBAND AND WIFE'S injuries and damages exceed all available bodily injury coverage." (*Id.* ¶ 10) (original syntax); (4) Fabiola Mafiol owed a duty of care to the Plaintiffs (*Id.* ¶ 11); and (5) "As a direct and proximate result of Sophia Peter's[1] negligence" the Plaintiffs suffered permanent injuries exceeding any available insurance coverages (*Id.* ¶¶ 12–13).

### 3. Legal Standard

Federal Rule of Civil Procedure 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual

---

[1] While initially intrigued by "Sophia Peter's" involvement in the subject accident, the Court soon discovered that Sophia Peter was an underinsured motorist in *Weisler v. Safeco Insurance Company of Illinois*, Case No. 14-CV-81107, 2015 WL 11281290 (S.D. Fla. Apr. 9, 2015) (Ryskamp, J.) Here, Sophia Peter appears to be a mere victim of the cut-and-paste approach of the Plaintiffs' counsel and not a negligent tortfeasor.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. When considering a motion to dismiss, the Court must accept all of a complaint's well-pled factual allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell,* 516 F.3d 1282, 1284 (11th Cir. 2008).

### 4. Analysis

#### A. The Fourth Amended Complaint

As an initial matter, the Court hereby strikes the Plaintiffs' unauthorized and improperly filed Forth Amended Complaint (ECF No. 27.) The Plaintiffs might have moved for leave to file an amended complaint. However, such a motion would be futile.

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a party seeking to amend its complaint after the time limits of 15(a)(1) have expired may do so only with the opposing party's written consent or the court's leave. Where amendment is sought after the deadline in the Court's scheduling order, however, the scheduling order may be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Sosa v. Airprint Sys., Inc.,* 133 F.3d 1417, 1418–19 (11th Cir. 1998).

"Good cause exists when evidence supporting the proposed amendment would not have been discovered in the exercise of reasonable diligence until after the amendment deadline had passed." *Friedman v. Coffman,* No. 10-60989, 2012 WL 668021, at *1 (S.D. Fla. Feb. 29, 2012) (Scola, J.) (citation omitted); *see also Payne v. Redmond Park Hosp., LLC,* 394 F. App'x 601, 603 (11th Cir. 2010) In *Payne,* the Eleventh Circuit held that the district court did not abuse its discretion in denying a motion to amend where the plaintiff sought to assert "newly discovered" information but failed to "assert [any] credible reason why this [information] could not have been discovered . . . prior to the expiration of the scheduling order." *Id.* The Court further stated, "They have not shown that despite due diligence, they could not comply with the terms of the scheduling order." *Id.*

Here, the Fourth Amended Complaint would constitute the Plaintiffs' fifth attempt to state a cause of action based on an incident that occurred in 2014. The Court already provided the Plaintiffs two opportunities to amend after the deadline to amend had passed. Now, the Plaintiffs cannot represent to the Court—with the candor required of Federal Rule of Civil Procedure 11—that some situation exists giving rise to good cause to amend their pleadings after the deadline to amend.

Case 1:16-cv-23946-RNS   Document 28   Entered on FLSD Docket 02/13/2017   Page 4 of 5

### B. The Third Amended Complaint

In the Third Amended Complaint, the Plaintiffs appear to assert a cause of action arising from an underinsured motorist claim. In order to sustain this claim, the Plaintiffs must show that they are "legally entitled to recover damages from owners or operators of uninsured motor vehicles . . . ." Fla. Stat. § 627.727 (2014); *see also Weisler v. Safeco Ins. Co. of Illinois*, No. 14-CV-81107, 2015 WL 11281290, at *3 (S.D. Fla. Apr. 9, 2015) ("The [underinsured motorist] action is predicated upon the cause of action against the tortfeasor." (citing *Woodall v. Travelers Indem. Co.*, 699 So. 2d 1361, 1363 n.5 (Fla. 1997))); *State Farm Mut. Auto. Ins. Co. v. Revuelta*, 901 So. 2d 377, 379 (Fla. Dist. Ct. App. 2005) (noting in an action to recover uninsured motorist benefits from the plaintiffs' insurer, "The issue here was driver negligence."). The Plaintiffs' Third Amended Complaint still contains no allegations regarding the negligence of the underinsured motorist other than conclusory allegations, for example, that "Fabiola Mafiol negligently operated, maintained, and/or controlled her vehicle . . . ." (Compl. ¶ 9.)

The Plaintiffs also continue in their attempt to raise an unnamed derivative claim on behalf of Richard Lucas. Throughout the Third Amended Complaint, the Plaintiffs refer to "BONNIE LUCAS AND RICHARD LUCAS INDIVIDUALLY AND AS HUSBAND AND WIFE." However, the Court cannot determine what injuries or damages, if any, were sustained by Richard Lucas. In the Order dismissing the Amended Complaint, the Court stated:

> Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Further, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." *Id.* Pleadings that violate this Rule, often considered "shotgun pleadings," remain disfavored in the Eleventh Circuit. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1320-23 (11th Cir. 2015) (collecting cases); *see also Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 980 (11th Cir. 2008) (describing a complaint with "untold causes of action, all bunched together in one count [as] contrary to the requirements of [Rule] 10(b).("). A court has the discretion to dismiss a complaint for failure to comply with the pleading rules. *Heard v. Nix*, 170 F. App'x 618, 619-20 (11th Cir. 2006).

(Order at 3, ECF No. 13.) Here, the Third Amended Complaint continues to allege only one cause of action—"Underinsured Motorist Claim against USAA

Casualty Insurance Company of Illionis [sic] for the Negligence of Fabiola Mafiol, an Underinsured Motorist Under the Policy." (Compl. at 3.)

Finally, the Court will not provide the Plaintiffs an opportunity to amend. Between the state-court filings and this Court, the Plaintiffs have had five opportunities to plead a cause of action. *Peavey v. Black*, 476 F. App'x 697, 699 (11th Cir. 2012) (holding that the district court did not abuse its discretion in finding that "after three strikes [the plaintiff] was out" and then dismissing without leave to amend the plaintiff's second amended complaint). In the Third Amended Complaint, the Plaintiffs have failed entirely to address the deficiencies that the Court noted when it first granted the Defendant's motion to dismiss. *Barrett v. Scutieri*, 281 F. App'x 952, 954 (11th Cir. 2008) ("[A] district court's discretion to dismiss a complaint without leave to amend is restricted by [Rule] 15(a) . . .; but if there has been a repeated failure to cure deficiencies by amendments previously allowed, the district court does not have to allow the party to amend the pleading.") The Court reviewed the Plaintiffs' stricken Fourth Amended Complaint, which likewise does not correct these deficiencies. The Court remains convinced that further opportunities to amend will not induce the Plaintiffs to submit a complaint that states a clear and sufficient cause of action.

## 5. Conclusion

Accordingly, the court **strikes** the Plaintiffs' Forth Amended Complaint (**ECF No. 27**). The Court further finds that the Plaintiffs have failed to sufficiently plead a cognizable claim upon which relief could be granted. In addition, the Plaintiffs fail to comply with Rule 10(b). For the reasons explained above, the Court **grants** the Defendant's Motion to Dismiss (**ECF No. 26**) and **dismisses** the Plaintiffs' Third Amended Complaint (**ECF No. 24**) **without leave to amend**. The Court directs the Clerk to **close** this case. All pending motions are **denied as moot**.

**Done and ordered**, at Miami, Florida, on February 13, 2017

Robert N. Scola, Jr.
United States District Judge

Filing # 53903112 E-Filed 03/17/2017 04:55:13 PM

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR MIAMI
DADE COUNTY, FLORIDA

CASE NO.: 17-004213 CA 01

BONNIE LUCAS and RICHARD LUCAS,
Individually and as Wife and Husband,

     Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY, an
Insurance Company authorized to do Business in
Florida,

     Defendant.

_____/

**NOTICE OF HEARING**
(Motion Calendar)

     YOU ARE HEREBY NOTIFIED that the undersigned is calling the following for

hearing:

**Defendant's Motion to Dismiss with Prejudice and Memorandum of Law**

**DATE:**     April 11, 2017

**TIME:**     8:45 a.m.

**JUDGE:**     The Honorable Jose M. Rodriguez

**PLACE:**     Dade County Courthouse
              73 West Flagler Street, Room DCC 400
              Miami, Florida 33130

**CERTIFICATE OF SERVICE**

     **WE HEREBY CERTIFY** a true copy of the foregoing was provided, via E-Mail to:
rgilb4193@hotmail.com at: Ronald B. Gilbert, Esq., P.O. Box 560396, Miami, Florida 33256 on this
16ᵗʰ day of March, 2017.

                              WADSWORTH LAW, LLLP
                              Attorneys for Defendant

14 N.E. 1st Avenue, 10th Floor
Miami, FL 33132
(305) 777-1000 Telephone
(305) 777-1001 Facsimile

By:      /s/ Christopher W. Wadsworth
         Michael J. Snowden
         Florida Bar No. 622656
         E-Mail: ms@wadsworth-law.com
         Christopher W. Wadsworth
         Florida Bar No. 78026
         E-Mail: cw@wadsworth-law.com

Filing # 54798568 E-Filed 04/07/2017 01:57:16 PM

IN THE CIRCUIT COURT OF THE 11TH<br>
JUDICIAL CIRCUIT IN AND   FOR<br>
MIAMI -DADE COUNTY,<br>
FLORIDA

CASE NO. 2017-004213 CA 01

BONNIE LUCAS and RICHARD LUCAS,   )
   her Husband,

       Plaintiffs,
v.

USAA CASUALTY INSURANCE COMPANY,)

       Defendant.

_____/

## PLAINTIFFS RESPONSE TO DEFENDANT USAA MOTION TO DISMISS

The Plaintiffs file this their Response to Defendant's USAA Motion to Dismiss as state as follows:

   1)   The USAA Motion to Dismiss should be denied in that in that the Court can only consider the four corners of the Complaint in ruling on a Motion to Dismiss a Complaint

"It is well-settled "that in considering a motion to dismiss a complaint for failure to state a cause of action, the trial or appellate court is confined to the allegations

] within the four corners of the complaint." *Corbett v. En. Air Lines, Inc.*, 166 So.2d 196, 203 (Fla. 1st DCA 1964). There are also well-settled rules regarding when an affirmative defense can serve as the basis for a motion to dismiss. "If the face of the complaint contains allegations which demonstrate the existence of an affirmative defense then such defense can be considered on motion to dismiss. Otherwise an affirmative defense may not be considered on motion to dismiss a complaint." *Frank v. Campbell Prop. Mgmt., Inc.*, 351 So.2d 364, 364–65 (Fla. 4th DCA 1977) (citations omitted); *see also* Fla. R. Civ. P. 1.110(d) ("Affirmative defenses appearing on the face of a prior pleading may be asserted as grounds for a motion or defense under rule 1.140(b)[.]")."

*Kowallek v. Rhem*, 177 So.3d 299 (Fla. App., 2015) at 177 So.3d 301

The basis for the Motion to dismiss, etc. may be affirmative defenses to wit: Res Judicata and are not within the four corners of the Plaintiffs' complaint and the court should deny on that basis alone.

1

2) **There are two bases for the Defendants Motion (1) Res Judicata of the Dismissal by the Southern District Court which they alleged is an adjudication the merits of Plaintiff's Uninsured Motorist claims for damages under their UM Policy and (2) that the claim had to be refiled in the Southern District.**

**As to the First Res Judicata argument that the Dismissal for failure to state a cause of action without leave to amend the Plaintiffs' state that there has never been an adjudication of their rights under the UM Policy so under the doctrine of Res Judicata cannot apply to the Dismissal Order.**

### Argument on Res Judicata

"It is well established "that for the doctrine of res judicata to apply, several conditions must exist, which include: 'identity of the thing sued for; identity of the cause of action; identity of [the] parties; and identity of the quality in the person for or against whom the claim is made.'" Dadeland Depot, Inc. v. St. Paul Fire Marine Ins. Co., 945 So. 2d 1216, 1235 (Fla. 2006)) (quoting Albrecht v. State, 444 So. 2d 8, 12 (Fla. 1984)). "Res judicata applies to matters actually raised and determined in the original proceeding and also to matters which could have properly been raised and determined." Id. (citing State v. McBride, 848 So. 2d 287, 290 (Fla. 2003)). "The rule of collateral estoppel (or estoppel by judgment) requires that the matter sought to be interposed as a bar must have been litigated and determined by the judgment, or if not expressly adjudicated, essential to the rendition of the judgment." Pa. Ins. Co. v. Miami Nat'l Bank, 241 So. 2d 861, 863 (Fla. 3d DCA 1970). Neither res judicata nor collateral estoppel apply to this case.

**United Auto. Ins. Co. v. Law Offices of Michael I. Libman (Fla.3RD DCA., 2010) at page 3**

"Res judicata means that:

> [a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.

*Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005) (citations omitted).

Page 6

> In order for the doctrine of res judicata to bar a subsequent suit, four identities must exist: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons and parties; and (4) identity of the quality or capacity of the persons for or against whom the claim is made.

*Holt v. Brown's Repair Serv., Inc.*, 780 So. 2d 180, 181-82 (Fla. 2d DCA 2001).

2

With respect to the identity of the thing being sued for, Appellant's replevin action sought the return of his property while Appellant's instant suit sought money damages for the Sheriff's violation of section 790.33 and an injunction preventing the Sheriff from enforcing its allegedly illegal policy. These "things" are not identical. *See Jones v. State ex rel. City of Winter Haven*, 870 So. 2d 52, 55 (Fla. 2d DCA 2003) (holding that lawsuit for money damages for code violations did not share identity for thing sued for with lawsuit for foreclosure based on liens for code violations).

Likewise, the two suits did not share an identity of cause of action. "The presence of [identity of cause of action] is a question of 'whether the facts or evidence necessary to maintain the suit are **the same** in both actions.'" *Tyson*, 890 So. 2d at 1209 (quoting *Albrecht v. State*, 444 So. 2d 8, 12 (Fla. 1984)). In this case, the facts and evidence necessary to prove Appellant's claim for a violation of section 790.33 are not identical to those necessary to prove he was entitled to the return of firearms in the replevin suit. In order to be entitled to a return of seized property, a movant must allege and prove that "the property at issue was the movant's personal property, was not the fruit of criminal activity, and was not being held as evidence." *Eight Hundred, Inc. v. State*, 895 So. 2d 1185, 1186 (Fla. 5th DCA 2005). Conversely, as discussed above, in order to allege a cause of action under section 790.33, the complaining party must allege and prove that it was "adversely affected by any ordinance, regulation, measure, directive, rule, enactment, order, or policy promulgated or caused to be enforced in violation" of section 790.33. § 790.33(3)(f), Fla. Stat. (2014)."

**Dougan v. Bradshaw (Fla. 4ᵗʰ DCA., 2016) at page 5**

**See also –**

"Res judicata means that:

> [a] judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action".

*Tyson v. Viacom, Inc.*, 890 So. 2d 1205, 1209 (Fla. 4th DCA 2005) (citations omitted).

> In order for the doctrine of res judicata to bar a subsequent suit, four identities must exist: (1) identity of the thing sued for; **(2) identity of the cause of action;** (3) identity of persons and parties; and (4) identity of the quality or capacity of the persons for or against whom the claim is made.

*Holt v. Brown's Repair Serv., Inc.*, 780 So. 2d 180, 181-82 (Fla. 2d DCA 2001).

**Florida Courts have ruled that a dismissal by a court order under the Florida Rule is not a dismissal with prejudice.**

**FLORIDA RULES OF CIVIL PROCEDURE RULE 1.420.   DISMISSAL OF ACTIONS**

**(20   By Order of Court; If Counterclaim.** Except as provided in subdivision (a)(1) of this rule, an action shall not be dismissed at a party's instance except on order of the court and upon such

3

terms and conditions as the court deems proper. If a counterclaim has been served by a defendant prior to the service upon the defendant of the plaintiff's notice of dismissal, the action shall not be dismissed against defendant's objections unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

**See Hardee v. Gordon Thompson Chevrolet, Inc., 154 So.2d 174 (Fla. App. 1 Dist., 1963)**
At page 179

"The inescapable effect of the revision by our Supreme Court of Rule 1.35(b) is to relegate the practice and procedure in Florida on the point now considered to the principles of law which were in effect in this state prior to the adoption in 1950 of our rules of civil procedure as reflected by the decision of the Supreme Court of Florida in the Kautzmann case, supra, and by the Second District Court of Appeal in the Bricklayers case, supra. The authority of the trial court to adjudge that the dismissal of the action shall be with prejudice must be determined in light of the principles announced in those decisions. This brings us to the question of whether the insufficiency of the complaint in this case relates to the facts alleged, or to the allegations of fact. It the insufficiency relates to some inherent defect in the case shown by the facts alleged, the judgment of dismissal will operate as an adjudication on the merits, and the dismissal with prejudice must be held proper. **If, however, the insufficiency relates to the failure of the complaint to allege necessary facts to state a cause of action, the judgment of dismissal will not constitute an adjudication of the merits, nor a bar to a subsequent suit on the same cause of action, and the trial court will be held in error for having ordered that the dismissal is with prejudice."** Page 6

**The dismissal by the District Court is specifically that no cause of action was alleged so there cannot be an effect of forestalling or foreclosing a legally sufficient cause of action that was never litigated on the merits.**

**The Defendant has admitted that the Plaintiffs' insurance policy was in effect at the time of the accident claim sued on and that they had $400,000.00 excess coverage. Exhibit A (Answers to Request for Admissions)**

**The only dispute is the damages they have sustained by the injuries and the right to recover the amount of damages.**

**The dismissal never ruled or decided the merits of her claim for damages only that is was never properly plead. Therefore, alleging that no cause was plead then stating that there was an identity of the cause of action is contradiction worthy of Alice in Wonderland. If no cause was plead no ergo no cause was adjudicated under res judicata.**

### ARGUMENT ON REFILING IN SOUTHERN DISTRICT ARGUMENT

**The argument that the claim has been removed to Federal Court is also contradictory. The Federal Court ruled no claim was submitted i.e. no cause of action. Therefore, the**

4

argument that although no cause was submitted it still must be resubmitted, this is the height of casuistry. Since the Federal court found no cause the Plaintiffs' claims have never within the Southern District purview so no violation of rules exists.

Additionally, the Plaintiff's in the abundance of caution has filed a Motion to Amend Order in Southern District to prophylactically obtain a clarification of Judge's Order while not admitting it has a Res Judicata effect on Plaintiff's claims. (See Exhibit B) The Court has not ruled and the Plaintiffs cannot request a ruling under the applicable rules for 90 days after it was filed. So, this court if it decides there is any merit in USAA motion should stay the decision for 90 days to allow a decision from the Judge in the Southern District.

Wherefore the Plaintiff's move that the Defendant's USAA Motion be denied or stayed.

Respectfully submitted,
RONALD B. GILBERT
Attorney for Plaintiff
Rgilb4193@hotmail.com
P.O. Box 560396
Miami, FL 33256-0396
TEL. (305) 546-6297
FAX: (305) 235-0586
Florida Bar # 111332

By: s/Ronald B. Gilbert

I certify that a copy hereof has been furnished to e-mail Michael Snowden, ms @wadsworth -law.com, cw@wadsworth-law.com, shaylan@wadsworth-law.com, tamic@wadsworth-law.com, WADSWORTH LAW, LLLP 14 N.E. 1st Avenue, 10th Floor Miami, FL 33132 Telephone: 305-777-1000 Attorneys for Defendant Attorneys for Defendant this 7th Day April 2017.

By:   s/Ronald B. Gilbert
RONALD B. GILBERT

5

Filing # 54798568 E-Filed 04/07/2017 01:57:16 PM

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

|  |  |
|---|---|
| BONNIE LUCAS and ) | |
| RICHARD LUCAS individually and as ) | |
| husband and wife ) | |
| ) | CIVIL ACTION FILE |
| Plaintiffs, ) | |
| ) | CASE NO.: 1:16-cv-23946-RNS |
| vs. ) | |
| ) | |
| USAA CASUALTY INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT USAA CASUALTY INSURANCE COMPANY'S RESPONSE TO PLAINTIFF'S REQUEST FOR ADMISSIONS

Defendant USAA CASUALTY INSURANCE COMPANY ("USAA CIC"), hereby

responds to Plaintiff's Request for Admissions as follows:

1.      Defendant USAA Casualty Insurance Company, Insurance Company authorized
to do Business in Florida contracted with the Plaintiff's for an Underinsured Motorist Insurance
contract Insurance Policy (hereinafter referred to as Defendant) (Exhibit A Declaration Sheet
filed with original complaint) providing medical and other coverage for injuries sustained in auto
accident covering the date of 11/9/2014.

### RESPONSE:

**USAA CIC objects to Request Number 1 on the basis that it is vague and
ambiguous.  Subject to and without waiving the foregoing, USAA CIC
admits that it issued an automobile policy bearing policy number 00346 08
75C 7104 2, to Richard J. Lucas, with effective dates August 13, 2014 to
January 07, 2015, and that the policy speaks for itself and provides such
coverage as is consistent with its terms, conditions, limitations, exclusions
and provisions; otherwise denied.**

2.      That on the date of the above accident a Underinsured Motorist having liability
insurance of $10,000.00 which is less the Underinsured Motorist Insurance contract Insurance
that the Plaintiff's coverage on its Policy which provided $400,000.00 stackable coverage for

01977567

injuries sustained in an automotive accident who owned a motor vehicle that was negligently operated or maintained the motor vehicle so that it collided with Plaintiff's motor vehicle.

**RESPONSE:**

**USAA CIC objects to Request Number 2 on the grounds that it fails to comply with Federal Rule of Civil Procedure 36(a)(2). USAA CIC further objects to Request Number 2 because it is vague and ambiguous. Subject to and without waiving the foregoing, USAA CIC admits that on November 9, 2014, Bonnie Lucas was driving a 2012 Chevrolet Malibu, VIN 1G1ZA5EU2CF133091, owned by Richard Lucas, when she was involved in an automobile accident, and that the 2012 Chevrolet Malibu is listed on an automobile policy bearing policy number 00346 08 75C 7104 2, issued by USAA CIC to Richard J. Lucas, with effective dates August 13, 2014 to January 07, 2015, and that the policy speaks for itself and provides such coverage as is consistent with its terms, conditions, limitations, exclusions and provisions; otherwise denied.**

3. As a result plaintiff Bonnie Lucas suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff Bonnie Lucas will suffer the losses in the future. The Plaintiff Richard Lucas as Husband of Plaintiff Bonnie has sustained a loss of her services and Consortium and has had to provide medical and other assistance to his Wife and since she has sustained a permanent injury he will sustain such future losses also.

**RESPONSE:**

**Denied.**

4. The Plaintiff put Defendant on notice of a Uninsured Motorists over the money recovered by the tender of limits by the underinsured driver and demanded the full limits before the filing of this law suit and the Defendant has failed to tender the full limits of its policy prior t said filing.

**RESPONSE:**

**USAA CIC objects to Request Number 4 on the grounds that it fails to comply with Federal Rule of Civil Procedure 36(a)(2). USAA CIC further objects to Request Number 4 because it is vague and ambiguous, it is beyond the scope of discovery, and it is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Request Number 4 involves matters at issue in USAA CIC's pending Amended Motion to Dismiss Plaintiffs' Amended Complaint. Subject to and without waiving the**

01977567

foregoing, USAA CIC admits that there is a good faith disagreement between the parties as to the amount of damages sustained by Plaintiffs.

5.    That the at fault party was insured by GEICO who has tendered their policy limits of $10,000.00.

**RESPONSE:**

USAA CIC objects to Request Number 5 to the extent it is vague and ambiguous. USAA CIC also objects to Request Number 5 because it is beyond the scope of discovery and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Request Number 5 involves matters at issue in USAA CIC's pending Amended Motion to Dismiss Plaintiffs' Amended Complaint. Subject to and without waiving the foregoing, USAA CIC is without knowledge; therefore, denied.

6.    That the Defendant gave permission to accept the policy limits and has waived any subrogation rights

**RESPONSE:**

USAA CIC objects to Request Number 6 to the extent it is vague and ambiguous. USAA CIC also objects to Request Number 6 because it is beyond the scope of discovery and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Request Number 6 involves matters at issue in USAA CIC's pending Amended Motion to Dismiss Plaintiffs' Amended Complaint. Subject to and without waiving the foregoing, USAA CIC admits that by letter dated December 8, 2014, it notified Plaintiffs that it waived its subrogation rights; otherwise denied.

7.    That the Defendant offered $35,000 in response to the demand for policy limits.

**RESPONSE:**

USAA CIC objects to Request Number 7 because it is beyond the scope of discovery and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, Request Number 7 involves matters at issue in USAA CIC's pending Amended Motion to Dismiss Plaintiffs' Amended Complaint [DE 5]. Subject to and without waiving the foregoing, USAA CIC admits that on July 5, 2016, it offered $35,000 to resolve Bonnie Lucas's uninsured/underinsured motorist claim.

8.    That the Plaintiff Bonnie Lucas past medical for treatment of her injuries are in excess of $28,966.98

01977567

**RESPONSE:**

**Denied.**

9.    That the Documents attached to Plaintiff's Complaint are true copies of

1)    Declaration Sheet of Plaintiff's Policy at time of accident.

2)    Plaintiff's Automobile Policy in effect at time of accident.

3)    Demand Letter sent to the Defendant prior to institution of this litigation/

4)    That Defendant as No Fault Carrier has received all bills incurred by the Plaintiff's for treatment of her injuries.

**RESPONSE:**

(1) It is admitted that the Declaration Pages for the automobile policy number 00346 08 75C 7104 2, issued by USAA CIC to Richard J. Lucas for the policy period effective August 13, 2014 to January 7, 2015 is attached to Plaintiffs' Complaint; otherwise denied.

(2) It is admitted that a portion of the automobile policy number 00346 08 75C 7104 2, issued by USAA CIC to Richard J. Lucas for the policy period effective August 13, 2014 to January 7, 2015 is attached to Plaintiffs' Complaint; otherwise denied.

(3) It is admitted that a copy of the June 14, 2016 letter from Plaintiffs' attorney, Ronald Gilbert, Esq., to USAA CIC is attached to Plaintiffs' Complaint, but denied that it is a complete and accurate copy of the demand letter because it does not include the enclosures.

(4) USAA CIC objects to Request Number 9, subpart 4 because it is vague and ambiguous. USAA CIC also objects to the extent this Request seeks information that is beyond the scope of discovery and not reasonably calculated to lead to the discovery of admissible evidence because Plaintiffs have not asserted a claim against USAA CIC for No Fault benefits. Furthermore, USAA CIC is unable to respond to this Request because Plaintiffs have not attached any bills to Plaintiffs' Complaint. Subject to and without waiving the foregoing, USAA CIC is without knowledge as to whether it has received all bills incurred by Plaintiff Bonnie Lucas; therefore, denied.

01977567

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a copy of the foregoing has been furnished to Ronald B. Gilbert, Esquire (Rgilb4193@hotmail.com) PO Box 560396, Miami, FL 33256-0396 (Attorney for Plaintiffs) by Electronic Mail this _____ day of November, 2016.

                    BOYD & JENERETTE, P.A.

                    KRISTEN M. VAN DER LINDE
                    Florida Bar No. 0964573
                    D. BRYAN HILL, JR.
                    Florida Bar No. 0113687
                    201 N. Hogan Street, Suite 400
                    Jacksonville, FL 32202
                    Telephone: (904) 353-6241
                    Facsimile: (904) 493-3739
                    Attorneys for USAA CIC
                    efiling@boydjen.com

01977567

Filing # 54798568 E-Filed 04/07/2017 01:57:16 PM

IN THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT
OF FLORIDA
MIAMI DIVISION

BONNIE LUCAS and                         )
RICHARD LUCAS
Individually and as Wife and Husband
Plaintiffs                                          **CIVIL ACTION FILE**

                                         )
                                         )            **CASE NO.: 16-23946-Civ-Scola**
vs.

USAA CASUALTY Insurance Company
An Insurance Company authorized to
do Business in Florida                   )
Defendant

---

PLAIINTIFF'S MOTION RELIEF FROM A JUDGEMENT OR ORDER UNDER RULE 60(b) (1) and (6)

The Plaintiff's BONNIE LUCAS and RICHARD LUCAS file this their Motion For Relief From A Judgement
Or Order Under Fed.R.Civ.P. Rule 60(B) (1) And (6) and move the court to correct the Order or add that
the order was not meant to be an adjudication on the merits of the Plaintiff's claims under their
Uninsured/Excess Underinsured Motorist Insurance claims and state as follows;

On February 13th, 2017, this Court entered an Order Dismissing the Plaintiff's Complaint for failure to
state a cause of action with the following language:

"5. Conclusion Accordingly, the court strikes the Plaintiffs' Forth Amended Complaint (ECF No. 27).
The Court further finds that the Plaintiffs have failed to sufficiently plead a cognizable claim upon
which relief could be granted. In addition, the Plaintiffs fail to comply with Rule 10(b). For the reasons
explained above, the Court grants the Defendant's Motion to Dismiss (ECF No. 26) and dismisses the
Plaintiffs' Third Amended Complaint (ECF No. 24) without leave to amend. The Court directs the Clerk
to close this case."

The Plaintiffs have a valid insurance claim (see Exhibit A Declaration sheet) based upon their
Underinsured/Excess Underinsured claims that exceed the coverage of the at fault driver which
liability limits of $10,000.00 have been tendered to the Plaintiffs. The Plaintiff Bonnie Lucas has
sustained a fractured ankle, internal knee derangement, concussion from airbag injury, dental
damage and a herniated disc. Her medical bills exceed $28, 000.00 and she is still has future medical
expense to treat her injuries.

1

Plaintiff counsel has refiled a Complaint in Circuit Court in Miami-Dade County (See Exhibit B) which set forth a valid insurance claim correcting the inadequate allegations which this court found not stating a proper claim.

The Defendant has filed a Motion to Dismiss (see Exhibit C) which alleges this court Dismissal Order was with prejudice although the Order did not specify whether it was with prejudice. The Defendant relies on rule 41(b) of Federal Rules quoting

> (b) Involuntary Dismissal; If the Plaintiff fails to prosecute or comply with these rules or a court order, a Defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subsection (b) and any dismissal not under this rule, except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19.... **operates as an adjudication on the merits** ( emphasis added).

The Plaintiffs asked this court for relief under Fed.R.Civ.P. Rule 60 (b) 1. And (6) Relief from a Judgment or Order:

"Fed.R.Civ.P. Rule 60. Relief from a Judgment or Order

(a)      CORRECTIONS BASED ON CLERICAL MISTAKES; OVERSIGHTS AND OMISSIONS. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave.

(b)      GROUNDS FOR RELIEF FROM A FINAL JUDGMENT, ORDER, OR PROCEEDING. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

(1)  mistake, inadvertence, surprise, or excusable neglect;

(2)  newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3)  fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

(4)  the judgment is void;

(5)  the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)  any other reason that justifies relief."

2

**Rule 62**

(c)     "TIMING AND EFFECT OF THE MOTION.

(1)  *Timing.* A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding.

(2)  *Effect on Finality.* The motion does not affect the judgment's finality or suspend its operation.

(d)     OTHER POWERS TO GRANT RELIEF. This rule does not limit a court's power to:

(1)  entertain an independent action to relieve a party from a judgment, order, or proceeding;

(2)  grant relief under 28 U.S.C. §1655 to a defendant who was not personally notified of the action; or

(3)  set aside a judgment for fraud on the court. "


In  dismissing the Plaintiff's claims which are valid and substantial there would be a miscarriage of justice for punishing them for counsel mistake and not adjudicating their injury claims or policy which they paid to be covered in situations where they sustain injuries not covered by the at fault parties liability coverage, They will suffer their losses and  the liability carrier USAA which has received premiums for said coverage gets to avoid payment for their injuries claims as provided in their policy.


This court should grant relief as justified for do otherwise is to prejudice their rights and amending the Order of Dismissal to provide it was without prejudice and not an adjudication on the merits since the merits concerning their right to recover for the injuries under their policy have never been determined is only appropriate to avoid a miscarriage of justice. The Defendant would not be prejudiced because it has received premiums to cover the loss and to allow it to avoid payment would be a windfall avoidance of their obligations to pay for coverage already paid for by the Plaintiffs.


Wherefore the Plaintiffs' BONNIE LUCAS and RICHARD LUCAS ask the Court to amend its Order of Dismissal to specify it was without prejudice of the Plaintiff's rights of recovery under the policy.


Respectfully submitted,
RONALD B. GILBERT
Attorney for Plaintiff
Rgilb4193@hotmail.com
P.O. Box 560396
Miami, FL 33256-0396

3

TEL. (305) 546-6297
FAX: (305) 235-0586
Florida Bar # 111332

By: s/Ronald B. Gilbert

I certify that a copy hereof has been furnished to e-mail cw@wadsworth-law.com,
shaylan@wadsworth-law.com, tamic@wadsworth-law.com, WADSWORTH LAW, LLLP 14 N.E. 1st
Avenue, 10th Floor Miami, FL 33132 Telephone: 305-777-1000 Attorneys for Defendant Attorneys for
Defendant this 10th Day March 2017.

By:  s/Ronald B. Gilbert

RONALD B. GILBERT

4

Filing # 55071661 E-Filed 04/13/2017 06:12:22 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL   CIRCUIT   IN   AND   FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.: 17-004213 CA 01

BONNIE LUCAS and RICHARD LUCAS,
Individually and as Wife and Husband,

     Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY, an
Insurance Company authorized to do Business in
Florida,

     Defendant.

_____/

## NOTICE OF FILING FEDERAL COURT ORDER IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

     **COMES NOW,** the Defendant, USAA CASUALTY INSURANCE COMPANY, by and through its undersigned counsel, hereby files this a copy of the following federal court order in support of its Motion to Dismiss with Prejudice:

     1.    <u>Order Denying Plaintiffs' Motion for Relief from Judgment</u>, entered April 13, 2017, by the Honorable Robert N. Scola, Jr., United States District Judge for the Southern District of Florida, in Civil Action No. 16-23946-Civ-Scola. (attached)

## CERTIFICATE OF SERVICE

     **WE HEREBY CERTIFY** a true copy of the foregoing was provided, via E-Mail to: rgilb4193@hotmail.com at: Ronald B. Gilbert, Esq., P.O. Box 560396, Miami, Florida 33256 on this 13th day of April, 2017.

WADSWORTH LAW, LLLP
14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

CASE NO.: 17-004213 CA 01
Page 2

WADSWORTH LAW, LLLP
Attorneys for Defendant
14 N.E. 1st Avenue, 10th Floor
Miami, FL 33132
(305) 777-1000 Telephone
(305) 777-1001 Facsimile

By:    __/s/ Jamie Clark Dixon_____
Jamie Clark Dixon
Florida Bar No. 756881
E-Mail: jcd@wadsworth-law.com
Christopher W. Wadsworth
Florida Bar No. 78026
E-Mail: cw@wadsworth-law.com

WADSWORTH LAW, LLLP
14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

https://www2.miami-dadeclerk.com/ocs/ViewerHTML5.aspx?QS=B6%2f9EwnZlIiih%2b...   7/27/2017

Case 1:16-cv-23946-RNS   Document 35   Entered on FLSD Docket 04/13/2017   Page 1 of 2

United States District Court
for the
Southern District of Florida

Bonnie Lucas and Richard Lucas,          )
Plaintiffs,                              )
                                         )
v.                                       )
                                         )   Civil Action No. 16-23946-Civ-Scola
                                         )
USAA Casualty Insurance                  )
Company, Defendant.                      )
                                         )

### Order Denying Motion for Relief from Judgment

This matter is before the Court on the Plaintiffs' motion for relief from
judgment. (Mot., ECF No. 30.) Invoking Federal Rules of Civil Procedure
60(b)(1) and (6), the Plaintiffs seek entry of an order clarifying that the Court's
order dismissing the third amended complaint without leave to amend (ECF
No. 28) "was not meant to be an adjudication on the merits of the Plaintiff's
[sic] claims . . . ." (Id. at 1.) The Plaintiffs insist they have a "valid insurance
claim" and that "there would be a miscarriage of justice for punishing them for
counsel mistake and not adjudicating their injury claims or policy which they
paid to be covered in situations where they sustain injuries not covered by the
at fault parties liability coverage, They will suffer their losses and the liability
carrier USAA which has received premiums for said coverage gets to avoid
payment for their injuries claims as provided in their policy." (Id. at 1, 3)
(original syntax).

The Court is not unmindful that adjudication on the merits forecloses
the Plaintiffs' purported claims for relief. However, Federal Rule of Civil
Procedure 41(b) clearly states, "Unless the dismissal order states otherwise, a
dismissal under this subdivision (b) and any dismissal not under this rule—
except one for lack of jurisdiction, improper venue, or failure to join a party
under Rule 19—**operates as an adjudication on the merits.**" (emphasis
added). Such is the case here—the Court's order dismissing the complaint
without leave to amend operates as an adjudication on the merits.

The Court interprets the Plaintiffs' motion as claiming that their counsel
made a "mistake"—although the motion does not specify the precise error—and
thus relief from the order is appropriate. (Mot. at 3, ECF No. 30.) *See also* Fed.
R. Civ. P. 60(b)(1) (providing for relief from an order due to mistake,
inadvertence, surprise or excusable neglect). But the Plaintiffs' motion fails to
meet those or any other standards set forth in Rule 60(b). Further, as the

Case 1:16-cv-23946-RNS   Document 35   Entered on FLSD Docket 04/13/2017   Page 2 of 2

Court previously noted, the Plaintiffs' numerous attempts at amending their indecipherable pleadings failed: "The Court remains convinced that further opportunities to amend will not induce the Plaintiffs to submit a complaint that states a clear and sufficient cause of action." (Order at 5, ECF No. 28.) The Plaintiffs still have not provided any indication that they are capable of correcting any "mistake" if given the opportunity to amend their pleadings a sixth time.[1]

Accordingly, the Court **denies** the Plaintiffs' motion for relief from judgment (**ECF NO. 30**).

**Done and ordered**, at Miami, Florida, on April 13, 2017.

Robert N. Scola, Jr.
United States District Judge

---

[1] In so noting, the Court has reviewed the state-court complaint that the Plaintiffs filed *after* the Court dismissed their claims *with prejudice*. (Resp. Ex. 1, ECF No. 34.)

Filing # 56526563 E-Filed 05/16/2017 06:26:33 PM

IN THE CIRCUIT COURT OF THE 11ᵀᴴ
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.: 17-004213 CA 01

BONNIE LUCAS and RICHARD LUCAS,
Individually and as Wife and Husband,

     Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY, an
Insurance Company authorized to do Business in
Florida,

     Defendant.

_____/

### DEFENDANT'S FLORIDA STATUTE §57.105
### MOTION FOR ATTORNEY'S FEES AND SANCTIONS

**COMES NOW,** Defendant, USAA CASUALTY INSURANCE COMPANY, by and

through undersigned counsel, and files this, its Florida Statute §57.105 Motion for

Attorney's Fees and Sanctions with regard to the Plaintiffs' Complaint, and as grounds

therefore, state as follows:

1.    On or about February 21, 2017, Plaintiffs, BONNIE LUCAS and RICHARD

LUCAS, filed their Complaint against Defendant, USAA CASUALTY INSURANCE

COMPANY.

2.    Plaintiff's current lawsuit now pending before this Court has been litigated

and dismissed without leave to amend in the United States District Court for the Southern

WADSWORTH LAW, LLLP

14 NE First Avenue, 10ᵗʰ Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

CASE NO.: 17-004213 CA 01
Page 2

District of Florida. The cause has been adjudicated on the merits and the State Court, before whom this case is now pending, has no jurisdiction to disturb the Federal Court Order dismissing Plaintiffs' Complaint without leave to amend.

3.      On February 28, 2017, Defendant directed a Florida Statute §57.105 letter to the Plaintiffs, providing twenty-one (21) days for the Plaintiffs to dismiss their Complaint against Defendant with prejudice. *A copy of Defendant's Florida Statute §57.105 letter to Plaintiffs is attached hereto as Exhibit "A".*

4.      Plaintiffs have failed to dismiss with prejudice their Complaint against Defendants.

5.      Plaintiffs' Complaint is without merit. Federal Rule of Civil Procedure 41(b) clearly states, "Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule—except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19—**operates as an adjudication on the merits**." (emphasis added). Such is the case here—the Federal Court's order dismissing the complaint without leave to amend operates as an adjudication on the merits.

6.      The Plaintiffs' Complaint against the Defendant is frivolous, and it is not supported by the material facts necessary to establish the claim, and is not supported by the application of existing law to the material facts.

WADSWORTH LAW, LLLP

14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

CASE NO.: 17-004213 CA 01
Page 3

WHEREFORE, pursuant to Florida Statutes §57.105, Defendant, USAA

CASUALTY INSURANCE COMPANY, respectfully requests this Honorable Court grant

its Motion and award it reasonable attorneys' fees and costs, and sanction Plaintiff and

Plaintiffs' counsel, as the Court deem just and proper.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY a true copy of the foregoing was provided, via E-Mail to:

rgilb4193@hotmail.com at: Ronald B. Gilbert, Esq., P.O. Box 560396, Miami, Florida 33256

on this 16th day of May, 2017.

WADSWORTH LAW, LLLP
Attorneys for Defendant
14 N.E. 1st Avenue, 10th Floor
Miami, FL  33132
(305) 777-1000 Telephone
(305) 777-1001 Facsimile

By:     /s/ Jamie Clark Dixon
Jamie Clark Dixon
Florida Bar No. 756881
E-Mail: jcd@wadsworth-law.com
Christopher W. Wadsworth
Florida Bar No. 78026
E-Mail: cw@wadsworth-law.com



## Wadsworth Law LLLP

ATTORNEYS AT LAW

14 N.E. 1st Avenue, 10th Floor, Miami, FL 33132
Tel: (305) 777-1000 • Fax: (305) 777-1001
Toll Free: (855) 644-3400

WWW.WADSWORTH-LAW.COM
REPLY TO MIAMI OFFICE

Sherri-Ann Orums-Clarke
Stephen J. Demasouich
Raymond R. Dieppa
Jamie Clark Dixon
Hunter R. Falknar
Daniel L. Margrey
John D. Ferrault
Brittany Quintana
Katya M. Behdera
Orlando J. Romero
Sahar Rodriguez
Jack R. Simmons
Michael J. Snowden
Christopher W. Wadsworth

February 28, 2017

SERVED BY CERTIFIED MAIL
AND AS COURT DOCUMENT
*Via Email: rgilb4193@hotmail.com*
Ronald B. Gilbert, Esq.
P.O. Box 560396
Miami, Florida 33256

| | | |
|---|---|---|
| Re: | *Bonnie Lucas and Richard Lucas v. USAA Casualty Insurance Company* | |
| | Plaintiffs | : Bonnie Lucas and Richard Lucas |
| | Our Client | : USAA Casualty Insurance Company |
| | DOL | : 11/09/2014 |
| | Case No. | : 2016-017389-CA-01 |
| | Our File No. | : 31945 |

Dear Mr. Gilbert:

On February 24, 2017, we were provided with an original Complaint for Damages filed by your clients, Bonnie and Richard Lucas, against the Defendant, USAA Casualty Insurance Company. We note that the allegations in this latest Complaint claim a failure to pay uninsured/underinsured motorist benefits as a result of an accident which occurred, "on or about November 9, 2014", involving an allegedly negligent driver, named "Fabiola Mafiol".

On February 13, 2017, Judge Robert N. Scola of the United States District Court for the Southern District of Florida, dismissed with prejudice, the same claim arising from the facts you now allege. The Order of Dismissal specifies that it dismisses Plaintiff's Third Amended Complaint without Leave to Amend. Pursuant to Federal Rule of Civil Procedure, Rule 41(b), the dismissal by Judge Scola operates as an adjudication on the



MIAMI • FORT LAUDERDALE • TAMPA • JACKSONVILLE

Ronald B. Gilbert, Esq.
February 28, 2017
Page 2

merits. As such, the claim you have filed in State Court, Miami-Dade County, Florida, is strictly barred by the Doctrine of *Res Judicata*. This matter has been judicially decided and closed. Florida Courts are constitutionally bound by State and Federal law to give full faith and credit to the February 2017 Federal Court order.

It follows that the current Complaint that you have filed in the State Court of Florida is an improper and sham pleading. In that regard, it must be withdrawn.

Please accept this correspondence as Notice of the Defendant's Intent to Seek Sanctions pursuant to Florida Statute §57.105. The current Complaint will need to be withdrawn within twenty (20) days pursuant to the Safe Harbor language of the Statute. Failure to withdraw the Complaint within the allotted time period will expose you personally to all sanctions the Court deems appropriate.

Please govern yourself accordingly.

Very truly yours,

MICHAEL J. SNOWDEN

MJS/PC/rne

cc:    Robert Scoville

printing document                                                                    Page 1 of 3
Case 1:17-cv-22848-KMM   Document 1-2   Entered on FLSD Docket 07/28/2017   Page 111 of
117

Filing # 56637127 E-Filed 05/18/2017 03:40:59 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR
MIAMI DADE COUNTY, FLORIDA

CASE NO.: 17-004213 CA 01

BONNIE LUCAS and RICHARD LUCAS,
Individually and as Wife and Husband,

     Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY, an
Insurance Company authorized to do Business in
Florida,

     Defendant.

_____/

### NOTICE OF FILING FEDERAL COURT JUDGMENT IN FAVOR OF DEFENDANT, IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS WITH PREJUDICE

     **COMES NOW**, the Defendant, USAA CASUALTY INSURANCE COMPANY, by
and through its undersigned counsel, hereby files this a copy of the following federal
court Judgment in support of its Motion to Dismiss with Prejudice:

          1.  Judgment, entered May 17, 2017, by the Honorable Robert N. Scola,

Jr., United States District Judge for the Southern District of Florida, in Civil

Action No. 16-23946-Civ-Scola. (attached)

### CERTIFICATE OF SERVICE

     **WE HEREBY CERTIFY** a true copy of the foregoing was provided, via E-Mail to:

rgilb4193@hotmail.com at: Ronald B. Gilbert, Esq., P.O. Box 560396, Miami, Florida 33256

on this 18th day of May, 2017.

WADSWORTH LAW, LLLP

14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

CASE NO.: 17-004213 CA 01
Page 2

WADSWORTH LAW, LLLP
Attorneys for Defendant
14 N.E. 1st Avenue, 10th Floor
Miami, FL 33132
(305) 777-1000 Telephone
(305) 777-1001 Facsimile

By:    /s/ Jamie Clark Dixon
       Jamie Clark Dixon
       Florida Bar No. 756881
       E-Mail: jcd@wadsworth-law.com
       Christopher W. Wadsworth
       Florida Bar No. 78026
       E-Mail: cw@wadsworth-law.com

WADSWORTH LAW, LLLP

14 NE First Avenue, 10th Floor, Miami · Florida 33132 · Telephone (305) 777-1000 Facsimile (305) 777-1001

Case 1:16-cv-23946-RNS  Document 37  Entered on FLSD Docket 05/17/2017  Page 1 of 1

United States District Court
for the
Southern District of Florida

Bonnie Lucas and Richard Lucas,         )
Plaintiffs,                             )
                                        )
v.                                      )
                                        )   Civil Action No. 16-23946-Civ-Scola
USAA Casualty Insurance                 )
Company, Defendant.                     )
                                        )

### Judgment

The Court has dismissed this case. (Order, ECF No. 28.) The Court now enters judgment in favor of the Defendant and against the Plaintiffs, as required by Federal Rule of Civil Procedure 58. The Court directs the Clerk to **close** this case.

**Done and ordered** in chambers, at Miami, Florida, on May 17, 2017.

Robert N. Scola, Jr.
United States District Judge

Filing # 56649072 E-Filed 05/18/2017 05:15:37 PM

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT IN AND FOR MIAMI
DADE COUNTY, FLORIDA

CASE NO.: 17-004213 CA 01

BONNIE LUCAS and RICHARD LUCAS,
Individually and as Wife and Husband,

     Plaintiffs,

vs.

USAA CASUALTY INSURANCE COMPANY, an
Insurance Company authorized to do Business in
Florida,

     Defendant.

_____/

## NOTICE OF HEARING
(Special Set 30 minutes)

YOU ARE HEREBY NOTIFIED that the undersigned is calling the following for

hearing:

**Defendant's Motion to Dismiss with Prejudice and Memorandum of Law and
Defendant's Florida Statute §57.105 Motion for Attorney's Fees and Sanctions**

**DATE:**     June 30, 2017

**TIME:**     9:00 a.m.

**JUDGE:**     The Honorable Jose M. Rodriguez

**PLACE:**     Dade County Courthouse
               73 West Flagler Street, Room DCC 400
               Miami, Florida 33130

## CERTIFICATE OF SERVICE

**WE HEREBY CERTIFY** a true copy of the foregoing was provided, via E-Mail to:

rgilb4193@hotmail.com at: Ronald B. Gilbert, Esq., P.O. Box 560396, Miami, Florida 33256 on this 18th day of May, 2017.

> WADSWORTH LAW, LLLP
> Attorneys for Defendant
> 14 N.E. 1st Avenue, 10th Floor
> Miami, FL 33132
> (305) 777-1000 Telephone
> (305) 777-1001 Facsimile

By:   /s/ Jamie Clark Dixon
      Jamie Clark Dixon
      Florida Bar No. 756881
      E-Mail: ck@wadsworth-law.com
      Christopher W. Wadsworth
      Florida Bar No. 78026
      E-Mail: cw@wadsworth-law.com